**Ling Yin LIU, Appellant,**

v.

**CITY OF SAN ANTONIO, Jerry Pittman, and Anna Deosdade, Appellees.**

**Nos. 04–01–00241–CV, 04–01–00320–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 21, 2002.

Gary F. Churak, Law Offices of Gary F. Churak, San Antonio, for Appellant.

Deborah L. Klein, Asst. City Atty., Litigation Div., Mark Kosanovich, Fitzpatrick & Kosanovich, P.C., Jacqueline M. Stroh, Sharon E. Callaway, Crofts & Callaway, P.C., San Antonio, for Appellees.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: KAREN ANGELINI, Justice.

Ling Yin Liu, a civil servant, filed suit against her employer, the City of San Antonio ("the City") and two of her supervisors, Anna Deosdade and Jerry Pittman. The trial court granted summary judgment in favor of all three defendants. Liu appeals. We affirm.

## BACKGROUND

Liu worked as a transportation inspector with the City of San Antonio Police Department Ground Transportation Unit. Unhappy with certain working conditions, Liu called the City's Risk Management, Safety Division hotline. In response to Liu's call, Richard Cardenas went to the Ground Transportation Unit and told Rick Cullors, Liu's immediate supervisor, that the Safety Division had received a complaint from an employee. Cardenas inspected the premises and then informed Deosdade, the head of the Ground Transportation Unit, of certain safety problems on site. Deosdade asked Cardenas which employee had made the call, but Cardenas refused to give the employee's name, informing Deosdade that the identity of the complainant is confidential. Deosdade indicated that she knew which of her employees was the complainant. Liu alleges that Cullors later asked her whether she had informed Risk Management. According to Liu, Cullors then threatened to send her back to her prior job at the airport, to not allow her to attend any more training classes, and to give her a low employee performance appraisal ("EPA").

The following month, Liu received a low EPA. Because she received a low EPA,

Liu was not qualified to receive an increase in pay. She appealed her EPA and filed a grievance, alleging that she received the low EPA because of retaliation. As an example of this retaliation, Liu alleged that sixty days after she received verbal counseling, a written document reflecting the verbal counseling was placed in her personnel file. Liu believes that this written document was placed in her file in retaliation for her calling Risk Management. On December 11, 1997, Deputy Chief Jerry Pittman met with Liu and denied her grievance through this written response:

> I have reviewed the grievance packet submitted within the chain of command in accordance with A.D. 4.26.
>
> It should be noted that a counseling session is not a disciplinary action but rather advisory in nature. This represents a document pertinent to your job site, as such it should remain in your file for a period of 24 months.
>
> I have investigated the charges of retaliation alleged by you against Mr. Cullors and found them to be without merit. There is absolutely no evidence indicating Mr. Cullors has retaliated against you in any form.
>
> The adjustment of credit for eight hours of annual leave is outside the scope of this grievance.
>
> Again, I find no evidence of retaliation or justification for this grievance. Therefore, this grievance is denied.

At the bottom of Pittman's written response, Liu signed her name and indicated that she was not satisfied with his response. Pittman's response informed Liu that if she was not satisfied, she had three days to send Pittman's response to a department head.

The next day, December 12, 1997, Pittman again met with Liu and gave her a second written response. Liu alleges that it was during this meeting that she and Pittman entered into a settlement agreement. Liu alleges that this settlement agreement was memorialized in Pittman's written response of December 12, 1997:

> In response to the grievance submitted by Ling Yin Liu alleging retaliation and requesting the removal of a counseling report, Chief Pittman met with Ling Yin Liu and Rick Cullors, the immediate supervisor in an effort to resolve this matter.
>
> During the course of this meeting, the Employee's Performance Appraisal was reappraised based on documentation in the grievant's personnel file.
>
> The counseling report originated from a disagreement over compensatory time [and] was a verbal counseling given by the Transportation Inspection Supervisor Rick Cullors at the time of the offense. This counseling was verbal in nature only and is not included in the grievant's personnel file.
>
> Although there was no evidence of retaliation, the grievant was assured that retaliation will not be condoned or tolerated by management of this department.
>
> After discussing the aforementioned concerns with Mrs. Liu, the employee was satisfied and wished to withdraw her grievance.

At the bottom of Pittman's response, Liu signed her name and indicated that she was satisfied with his response. As stated in Pittman's response, a new, higher EPA was issued to Liu. This new EPA superseded her prior one, although the document reflecting the prior EPA remained in her personnel file. Under the impression that this document and the written document reflecting the verbal counseling would be removed from her personnel file, Liu was upset when she later learned that these documents remained in her file. She was informed that they remained because

once a document was placed in her file, it could not be removed. Liu was told that to do otherwise would violate state law.

Liu filed a Whistle Blower suit against the City. She later amended her petition to include claims for fraud, intentional infliction of emotional distress, breach of contract, negligent misrepresentation, and promissory estoppel. The City filed a plea to the jurisdiction and motion to dismiss. The trial court granted the plea and signed an order dismissing Liu's Whistle Blower claim and all of her tort claims against the City. Liu responded to this order of dismissal by adding Anna Deosdade and Jerry Pittman, two of her supervisors, as defendants and alleging that they committed various tortious acts. The City then filed a motion for summary judgment, requesting that the trial court grant judgment in its favor with respect to Liu's remaining breach of contract claim against it. The trial court granted the motion, severed Liu's claims against the City from her claims against Pittman and Deosdade,[2] and entered judgment in favor of the City. Deosdade and Pittman next filed a motion for summary judgment of their own, arguing that because the trial court had signed an order dismissing Liu's Whistle Blower and tort claims against the City, section 101.106 of the Texas Civil Practices and Remedies Code barred Liu's claims against them. The trial court granted the motion and entered summary judgment in favor of Pittman and Deosdade. Liu appeals the trial court's entry of summary judgment on her breach of contract claim against the City and the entry of summary judgment on her claims against Deosdade and Pittman. She does not appeal the trial court's order dismissing her Whistle Blower and tort claims against the City.

**2.** Liu's claims against the City were then assigned the trial court cause number 2000–CI–17691.

## STANDARD OF REVIEW

A party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Johnson,* 891 S.W.2d at 644; *Nixon,* 690 S.W.2d at 549. In addition, we must assume all evidence favorable to the nonmovant is true. *Johnson,* 891 S.W.2d at 644; *Nixon,* 690 S.W.2d at 548–49.

A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

## CITY'S MOTION FOR SUMMARY JUDGMENT

■ The City moved for summary judgment, arguing that there is no contract between the City and Liu. On appeal, Liu maintains that the trial court erred in granting judgment, because Pittman's written response of December 12, 1997 is the written contract. She argues that she agreed to settle her grievance in exchange for the City (1) removing the low EPA and the oral counseling report from her file

and (2) agreeing not to retaliate against her. Liu contends that the City breached this agreement by failing to remove the low EPA and oral counseling report from her personnel file and by continuing to retaliate against her.

We begin our analysis with examining the four corners of the alleged contract. Giving Pittman's response its plain, ordinary, and generally accepted meaning, *Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex.App.-San Antonio 2001, pet. denied), we cannot hold that it constitutes a legally enforceable contract. Pittman's response, entitled "Grievance Form," was part of the administrative review process of grievances. In his response, Pittman indicates that (1) he reappraised Liu's EPA, (2) he explained that the oral counseling by Rick Cullors is not a part of Liu's personnel file because it was a "verbal counseling," and (3) he determined that there was no evidence of retaliation although he reassured Liu that retaliation would not be condoned or tolerated by the City. The response does not reflect a promise by the City to perform certain acts; it only indicates Pittman's decision with regard to Liu's grievance and the reasons for that decision. Moreover, the response does not reflect that Liu promised to withdraw her grievance in consideration for the City's promise to perform certain acts. It only indicates that Liu is "satisfied" with the response and wishes to withdraw her grievance. The response also informs Liu that if she was not satisfied, she had three working days to take Pittman's response to the department head. Had Liu changed her mind within these three working days, she could have appealed Pittman's decision to the department head.

■ In spite of the plain and ordinary meaning of Pittman's response, Liu argues that her affidavit created an issue of material fact for the jury:

At that meeting [on December 11, 1997], Deputy Chief Pittman denied the grievance and stated that there was no evidence of retaliation. I advised Deputy Chief Pittman that I was not satisfied with his decision and wished to continue forward with the grievance. Within one hour after I left the meeting on December 11, 1997, I was paged by Deputy Chief Pittman and Captain Smith and was requested to meet with them the next day. On December 12, 1997, I met with Deputy Chief Pittman who told me that he wanted the matter resolved and that he would change my EPA to reflect the initial ratings given to me by Rick Cullors. He also stated that the low EPA and verbal counseling letter would be removed from my personnel file. Deputy Chief Pittman further stated to me that I would not be subjected to any retaliation within my Department. In consideration of the above representations by Deputy Chief Pittman, I agreed to withdraw my grievance and accept the proposed compromise offer tendered by Deputy Chief Pittman on behalf of the City of San Antonio. By accepting the compromise offer presented by Deputy Chief Pittman on behalf of the City, I agreed to end my grievance at that level and not proceed forward with the matter as provided in the City of San Antonio's Policy and Procedure Manual. Additionally, by accepting the offer [by] the city to settle my grievance the City has taken the position that I was no longer entitled to pursue my Whistle Blower action against the City in that I had not exhausted my administrative remedies. If in fact this is correct, then I also surrendered that right in consideration for the agreement with the City to settle my grievance. The above offer to settle my grievance against the City

was subsequently memorialized in writing and accepted by the City and myself as reflected by the signature of Deputy Chief Pittman and myself.

Liu's affidavit, however, is parol evidence and cannot refute the unambiguous meaning of Pittman's response. *See Sears, Roebuck and Co. v. Commercial Union Ins. Corp.,* 982 S.W.2d 151, 154 (Tex.App.-Houston [1st Dist.] 1998, no pet.). We, therefore, hold that the City did not enter into a written contract with Liu.[3]

▉ Liu also argues that the trial court should not have granted summary judgment on her promissory estoppel claim against the City. "The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983). Because we hold that the City did not promise anything to Liu, Liu cannot state a claim for promissory estoppel. The trial court, therefore, properly granted summary judgment in favor of the City. We overrule Liu's first issue.

### DEOSDADE AND PITTMAN'S MOTION FOR SUMMARY JUDGMENT

▉ After the trial court dismissed Liu's tort claims against the City, Deosdade and Pittman moved for summary judgment, arguing that section 101.106 of the Civil Practices and Remedies Code barred Liu's claims against them. Section 101.106 provides that "[a] judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the

employee of the governmental unit whose act or omission gave rise to the claim." TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997).

Liu alleged that the City violated the Texas Whistle Blower Act and that it also, along with Deosdade and Pittman, committed various tortious acts. In response, the City filed a plea to the jurisdiction, arguing that Liu was barred from bringing her claims under the Texas Tort Claims Act and Texas Whistle Blower Act. The trial court agreed, granted the City's plea, and dismissed Liu's Whistle Blower and tort claims against the City. Liu argues that the trial court's order dismissing these claims against the City is not a "judgment" under section 101.106. Therefore, she maintains that the trial court erroneously granted summary judgment in favor of Deosdade and Pittman under section 101.106. For support, Liu relies on *Brown v. Prairie View A & M Univ.,* 630 S.W.2d 405, 408 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.), which noted that "a judgment dismissing a suit for lack of jurisdiction is not res judicata as to the merits and does not bar a plaintiff from bringing an action on the same cause in a court having jurisdiction." Emphasizing that the trial court had not addressed the merits of the plaintiff's claim but had merely dismissed its claims for want of jurisdiction, the *Brown* court held that the judgment dismissing the plaintiff's claims for want of jurisdiction "is not a judgment which would bar action on the claim within the meaning of section 12(a)[4] of the Texas Tort Claims Act." *Id.*

---

3. Because we hold that the City did not enter into a written contract with Liu, we need not reach Liu's argument that the trial court should have enforced the contract through specific performance. *See Guzman v. Acuna,* 653 S.W.2d 315, 318 (Tex.App.-San Antonio 1983, writ dism'd) ("[s]pecific performance is

warranted where the remedies at law are inadequate and the existence of a valid contract is established.").

4. Section 12(a) is section 101.106's predecessor. It provided: "The judgment or settlement in an action or claim under this Act

Recently, however, the Fourteenth Court of Appeals in *Dalehite v. Nauta*, 79 S.W.3d 243, 244–45 (Tex.App.-Houston [14th Dist.] 2002, no pet. h.), reconsidered the issue in light of supreme court rulings:

> The Dalehites cite authority from this Court that an order granting a plea to the jurisdiction is not a judgment on the merits, and thus cannot form the basis of a governmental employee's immunity motion. *See Brown v. Prairie View A & M Univ.*, 630 S.W.2d 405 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding university employees were not entitled to immunity when university was dismissed for want of jurisdiction). But since *Brown*, the Texas Supreme Court has held just the opposite on several occasions. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998); *Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex.1997) (both cases construing section 101.106 to require dismissal of claims against governmental employees when claims against their governmental employer are dismissed on immunity grounds). We must follow the higher court.

Likewise, we hold that the trial court's order granting the City's plea to the jurisdiction on immunity grounds was a "judgment" for purposes of section 101.106.

 Liu also argues that even if we hold that section 101.106 applies, the trial court still erroneously dismissed her intentional tort claims against Deosdade and Pittman. Liu argues that section 101.106 is not applicable to her intentional tort claims, because section 101.057(2) of the Texas Tort Claims Act excludes claims "arising out of assault, battery, false imprisonment, or any other intentional tort,

including a tort involving disciplinary action by school authorities." Tex. Civ. Prac. & Rem.Code Ann. § 101.057 (Vernon 1997). Indeed, section 101.057 "expressly provides that claims for 'false imprisonment or any other intentional tort' are not covered by [the Texas Tort Claims] Act. Therefore immunity is not waived for these claims under state law." *City of San Antonio v. Hernandez*, 53 S.W.3d 404, 409 (Tex.App.-San Antonio 2001, pet. denied).

"Because section 101.106 expressly only applies to a 'claim under this chapter' and section 101.057 excludes intentional torts from application of the chapter, it would appear logical that section 101.106 could not operate to bar an intentional tort claim." *Pruitt v. Ziesmer*, No. 14–00–00054–CV, 2002 WL 1316218, at *5 n. 8 (Tex.App.-Houston [14th Dist.] June 13, 2002, no pet. h.). The Texas Supreme Court, however, in *Newman v. Obersteller*, 960 S.W.2d 621, 622–23 (Tex.1997), allowed section 101.106 to defeat an intentional tort claim, emphasizing that section 101.106 "bars any action." *Id.* We must, therefore, overrule Liu's second issue.

### Conclusion

Having overruled all of Liu's issues, we affirm the judgments of the trial court.

---

shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of a unit of government whose act or omission gave rise to the claim." Tex. Civ. Stat. Ann. art. 6252–19, § 12(a) (Vernon 1970).