Terrence S. WELCH, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., and Van James, Appellants

v.

Robert MILTON, Appellee.

No. 05–05–00716–CV.

Court of Appeals of Texas, Dallas.

March 9, 2006.

Gregory R. Ave, Walter, Balido & Crain, LLP, Dallas, Carvan E. Adkins and Cara Leahy White, Taylor, Olson, Adkins, Sralla & Elam, L.L.P., Fort Worth, Barton Lance Ridley, Dallas, TX, for Appellant.

Joseph Russell, Kaufman, David J. Moraine, Crosbie, Moraine, L.L.P., Denton, TX, for Appellee.

Before Justices O'NEILL, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

In two issues, appellants Welch, James, and Bickerstaff assert error in the trial court's denial of their motions for summary judgment. In their motions for summary judgment, appellants sought judgment on the defense that appellee's claims are barred by governmental employee sovereign immunity under section 101.106 of the Texas Civil Practice and Remedies Code and common-law official immunity. We have jurisdiction over this interlocutory appeal from the denial of appellants' motions for summary judgment pursuant to section 51.014(a)(5) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon 2004).

The suit below was brought by appellee, Robert Milton, following the termination of his employment as the Director of Public Works for the Town of Flower Mound, Texas. The termination occurred after an internal investigation of activities by employees of the Public Works Department, including Milton. Milton claims Welch, the Town Attorney, gave him personal legal advice at the same time he represented the Town in the investigation. Milton sued appellants Terrence Welch, the Town Attorney, Van James, the Town Manager, and the law firm of Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., Welch's law firm. The claims brought against appellants were malpractice, gross negligence, breach of fiduciary duty, constructive fraud, breach of the duty to warn, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act (DTPA), fraud, conspiracy, and malice.

Because fact issues exist regarding both asserted grounds of immunity, we conclude the trial court did not err in denying appellants' motions for summary judgment. Therefore, we decide appellants' issues against them and affirm.

## I. FACTUAL BACKGROUND

In 1995, the Town of Flower Mound hired appellee Robert Milton as the Assistant Director of Public Works. He was later promoted to Director of Public Works. In April 2000, the Town conducted an investigation into allegations of improprieties against employees of its Public Works Department. During the investigation, the specific events giving rise to this lawsuit occurred.

The relevant factual context began with a meeting which was arranged between the Town Manager, Van James, the Town Attorney, Terrence Welch, who is also a partner with the law firm Bickerstaff, Heath, Smiley, Pollan, Kever, & McDaniel, L.L.P. ("Bickerstaff"), and Milton. At the meeting, James presented Milton with a list of questions Milton was to answer under oath. Milton alleges that, at that time, he asked James if he needed to hire an attorney and James told him that he need

not hire a personal attorney because Welch, the Town Attorney, would advise him regarding the investigation. According to Milton, he answered the questions under oath after Welch "legally advised" him to do so. Soon thereafter, he was contacted by an employee in the Town's Human Relations Department and told to submit to a polygraph examination. He claims that Welch told him to answer the questions and submit to the polygraph to protect himself and because refusal to submit to the polygraph could subject him to discipline or termination.

On May 25, 2000, the Town terminated Milton's employment. The Town issued a press release announcing Milton's termination and the grounds for his termination, which included, among other points, sexual impropriety and theft. Milton alleges that Welch and James met together to author, review, and approve the press release. Milton immediately appealed his termination to the Flower Mound Appeal Review Board, seeking reinstatement. As Town Attorney, Welch provided advice to the review board regarding the legality and potential impact of their decisions during the appeal process. Milton alleges that while his appeal was pending, Welch wrote a letter to the members of the review board threatening them with personal liability if they reinstated Milton.

## II. PROCEDURAL BACKGROUND

A lengthy history has developed in this litigation where Milton has added and dismissed defendants, he has modified his legal claims, and this Court has ruled on an interlocutory appeal. In order for the basis of our conclusions to be understood, we revisit this history.

In his original petition, filed in May 2001, Milton brought claims against the Town; Van James, personally and as Town Manager; Terrence Welch, personally, as Town Attorney, and as an agent for Bickerstaff; and Bickerstaff, Welch's law firm. Milton alleged the suit arose from the willful slander and "life-altering" defamation by the Town, its employees, agents, and counsel. Soon after filing his original petition, Milton filed his first and second amended petitions. In his second amended petition, he modified his claims and added as defendants Parker–Jones, Inc., the company that administered the polygraph, and its employee, Bill Parker, individually.

In November 2001, defendants Welch, James, and the Town filed pleas to the jurisdiction. They asserted that Milton's claims against the Town were barred by sovereign immunity and did not fall within the limited waiver of immunity provided by the Texas Tort Claims Act, the claims against Welch and James in their official capacities were also barred by sovereign immunity, and the claims against Welch and James in their individual capacities were barred by qualified immunity. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2004) (waiver of sovereign immunity); TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997) (repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.02, 2003 Tex. Gen. Laws) (immunity for governmental employees).

Milton responded to the pleas to the jurisdiction by asserting that his claims of negligent supervision and negligence against the Town were not barred by sovereign immunity because the tortious conduct did not arise in the performance of a public function of the municipality. He further alleged that his claims were not precluded because the Town misused tangible property when it telecopied and otherwise delivered the press releases to area newspapers and negligently supervised the employees who delivered the

press releases. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

The litigation continued and Milton filed another amended petition, adding Does 1 and 2 as defendants. At this stage in the litigation, Milton asserted claims of malpractice, gross negligence, breach of fiduciary duty, constructive fraud, breach of the duty to warn, negligent misrepresentation, DTPA violations, and fraud against Welch and Bickerstaff; defamation per se, statutory libel, and intentional infliction of emotional distress against Welch, Bickerstaff, James, and the Town; negligent supervision of employees and/or agents and negligence against the Town; invasion of privacy against Welch, Bickerstaff, and James; false imprisonment and negligent hiring or supervision against Parker–Jones and Bill Parker; and conspiracy and malice against all defendants.

In January 2002, the trial court heard the pleas to the jurisdiction and granted Welch's and James's pleas in their official capacities, but denied the Town's plea. The Town perfected an interlocutory appeal contending the doctrine of sovereign immunity precluded Milton's claims against it and that the trial court erred by concluding otherwise. This Court issued an opinion on March 6, 2003 on the Town's interlocutory appeal, reversing the trial court's denial of the Town's plea and rendering judgment dismissing Milton's claims against the Town. We concluded that the gravamen of Milton's complaints was the Town's misuse of information, not tangible property i.e., the telecopy machine. Accordingly, the facts did not support a finding of a waiver of sovereign immunity under the Texas Tort Claims Act. *See Town of Flower Mound v. Milton,* 2003 WL 751896 (Tex.App.-Dallas 2003); *see also* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021(2), 101.025(a).

Milton again amended his petition in July 2003, and named only Welch, Bickerstaff, and James as defendants. He subsequently filed his eighth and ninth amended petitions, again modifying the claims. Milton's ninth amended petition was the live pleading at the time of the summary judgment hearing.

In his ninth amended petition, Milton alleged that the suit arose from "the conduct of attorney Welch, who with the assistance of James, misappropriated Milton's confidential information for the use and benefit of his more lucrative client, the Town, at Milton's expense." Milton based his allegations on conversations between Milton, Welch, and James and purported statements by James that Welch would act as Milton's lawyer. These statements are alleged to be fraudulent and designed to induce Milton to believe Welch was his attorney when, in fact, Welch represented the Town. According to Milton, Welch understood Milton looked to him for personal legal advice.

Additionally, Milton claimed that while Welch represented him, he also advised the Appeal Review Board and reviewed the press releases issued by the Town following Milton's termination. It is Milton's legal position that the formation of an attorney-client relationship between Welch and himself removed Welch from the protection of governmental employee immunity in section 101.106 of the Texas Civil Practice and Remedies Code and common-law official immunity. With regard to James, Milton claimed that, at all times, James was not acting in good faith and was not acting as a reasonably prudent Town Manager or public official. James was also sued as an aider and abettor in Welch's breach of fiduciary duty and as a co-conspirator.

In February 2004, Welch, James, and Bickerstaff filed motions for summary

judgment asserting governmental employee immunity under section 101.106 of the Texas Civil Practice and Remedies Code and common-law official immunity. The trial court denied these motions in an August 2004 order. This appeal followed.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). We apply the same standard for reviewing the denial of summary judgment where there is an assertion of immunity as we do for the granting of summary judgment. *Bartlett v. Cinemark USA, Inc.*, 908 S.W.2d 229, 233 (Tex.App.-Dallas 1995, no writ); *see* TEX. CIV. PRAC. & REM.CODE · ANN. § 51.014(a)(5); *Ervin v. James*, 874 S.W.2d 713, 715 (Tex.App.-Houston [14th Dist.] 1994, writ denied). The standard for reviewing a summary judgment is well established:

> To obtain summary judgment, a movant must either negate at least one element of the plaintiff's theory of recovery, *'Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972), or plead and conclusively establish each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Once the defendant produces sufficient evidence to establish the right to summary judgment, the plaintiff must present evidence sufficient to raise a fact issue. *'Moore' Burger*, 492 S.W.2d at 936–37.

*Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

We follow these rules when reviewing a summary judgment: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in favor of the non-movant. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985)). A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for summary judgment. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991); *Tex. Dep't of Pub. Safety v. Perez*, 905 S.W.2d 695, 698 (Tex.App.-Houston [14th Dist.] 1995, writ denied).

■ In this case, appellants moved for summary judgment based on the affirmative defenses of governmental employee sovereign immunity set forth in section 101.106 of the Tort Claims Act and common-law official immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997) (repealed by Act of June 2, 2003, 78th Leg., RS., ch. 204, § 11.02, 2003 Tex. Gen. Laws). To be entitled to summary judgment on the affirmative defenses of governmental employee sovereign immunity and common-law official immunity, the movant has the burden to conclusively establish all the elements of those defenses as a matter of law. *See Perez*, 905 S.W.2d at 698; *see also KPMG*, 988 S.W.2d at 748; *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996). "No disputed question of material fact can remain on the affirmative defense." *Colbert v. Hollis*, 102 S.W.3d 445, 448 (Tex.App.-Dallas 2003, no pet.); *see Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

On appeal, the burden is on appellants to direct the appellate court to evidence in the record supporting their contentions. *Hope's Fin. Mgmt. v. Chase Manhattan Mortgage Corp.*, 172 S.W.3d 105, 108 (Tex.App.-Dallas 2005, pet. denied); *see Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). This Court is not required to search the record for evidence supporting a litigant's position under particular points of error. *Jackson*, 732 S.W.2d at 412; *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283 (Tex.1994) (stating "it has never been a part of an appellate court's duties to search the record for evidence itself."). Pleadings do not constitute summary judgment proof. *Clear Creek*, 589 S.W.2d at 678; *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540 (Tex.1971). Additionally, conclusory statements are not proper summary judgment proof. *Yancy v. United Surgical Partners Intern., Inc.*, 170 S.W.3d 185, 192 (Tex. App.-Dallas 2005, pet. filed); *Hodgkins v. Bryan*, 99 S.W.3d 669, 674 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

## IV. APPLICABLE LAW

### A. Section 101.106

#### 1. Defense of James and Welch

James and Welch claim they are entitled to summary judgment as a matter of law because Milton's claims against them are barred by section 101.106 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997) (repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.02, 2003 Tex. Gen. Laws). At the time suit was filed in 2001, section 101.106 provided that, "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." *Id.*

#### 2. The Elements of a Defense under Section 101.106

The elements of proof of the defense of governmental employee sovereign immunity under section 101.106 are: (1) there is a judgment or settlement; (2) of a claim under the Act; (3) involving the same subject matter; (4) brought by the same claimant; (5) asserted against the employee of a governmental entity; (6) whose act or omission gave rise to the claim which resulted in the judgment or settlement. *McGowen v. Huang*, 120 S.W.3d 452, 457 (Tex.App.-Texarkana 2003, pet. denied); *Smith v. Altman*, 26 S.W.3d 705, 708 (Tex.App.-Waco 2000, pet. dism'd w.o.j.).

#### a. Judgment or Settlement

Section 101.106 forecloses any claim against an employee subsequent to, or concurrent with, the rendition of a judgment as to claims against the governmental entity. *Thomas v. Oldham*, 895 S.W.2d 352, 355 (Tex.1995). "The immunity conveyed to a governmental unit's employees by section 101.106 is triggered by *any* judgment in an action against a governmental unit, including a judgment in favor of the governmental unit." *Dallas Co. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343–44 (Tex.1998) (emphasis original); *see Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex.1997). A dismissal on a plea to the jurisdiction is a judgment for purposes of section 101.106. *Harris County v. Sykes*, 136 S.W.3d 635, 640 (Tex.2004) (discussing *Liu v. City of San Antonio*, 88 S.W.3d 737, 744 (Tex. App.-San Antonio 2002, pet. denied); *Dalehite v. Nauta*, 79 S.W.3d 243, 244 (Tex. App.-Houston [14th Dist.] 2002, pet. de-

nied); *Doyal v. Johnson County*, 79 S.W.3d 139, 140 (Tex.App.-Waco 2002, no pet.); and *Lowry v. Pearce*, 72 S.W.3d 752, 755 (Tex.App.-Waco 2002, pet. denied)).

### b. Same Subject Matter

 The purpose of section 101.106 is to protect government employees from individual liability for acts or omissions where a claim based on the same facts is made against their employers under the Texas Tort Claims Act. *Gonzalez v. El Paso Hosp. Dist.*, 940 S.W.2d 793, 795 (Tex.App.-El Paso 1997, no writ). The express language of section 101.106 bars a judgment against a government employee where there is a Tort Claims Act judgment or settlement concerning the same subject matter. *Oldham*, 895 S.W.2d at 355; *Gonzalez*, 940 S.W.2d at 795; *Owens v. Medrano*, 915 S.W.2d 214, 215 (Tex.App.-Corpus Christi 1996, writ denied).

In 1993, this Court defined "involving the same subject matter" in the context of section 101.106. *See White v. Annis*, 864 S.W.2d 127, 131 (Tex.App.-Dallas 1993, writ denied). In *White*, we applied the meaning used by the Federal courts and defined "same subject matter" to mean "arising out of the same actions, transactions, or occurrences." *White*, 864 S.W.2d at 131 (quoting *Serra v. Pichardo*, 786 F.2d 237, 239 (6th Cir.), *cert. denied*, 479 U.S. 826, 107 S.Ct.103, 93 L.Ed.2d53 (1986) (defining the similar phrase "by reason of the same subject matter" in the Federal Tort Claims Act)). Applying this definition to the facts of the case in *White*, this Court concluded "that the same occurrence, the breaking of Jason's Annis's leg by the exploding truck tire owned by the City, gave rise to both the statutory action against the City and the common-law negligence action against White." *Id.* at 131.

In *Dallas Co. Mental Health & Mental Retardation v. Bossley*, the Texas Supreme Court also defined "involving the same subject matter" as "arising out of the same actions, transactions, or occurrences." *Bossley*, 968 S.W.2d at 344 (agreeing with *White*, 864 S.W.2d at 131 and *Bell v. Love*, 923 S.W.2d 229, 233 (Tex.App.-Houston [14th Dist.] 1996, no writ)).

Subsequent to *White* and *Bossley*, the Waco Court of Appeals decided *Lowry v. Pearce*. That Court applied the meaning established by this Court and the Texas Supreme Court for the phrase "involving the same subject matter." In *Lowry*, Pearce brought a wrongful death action after the death of her son, Robert, a longtime resident of the Mexia State School. She sued the school; the superintendent, Lowry; an employee, Thomas; a former employee, Harris; and the Texas Department of Mental Health and Mental Retardation ("MHMR"), which operated the school. *Lowry*, 72 S.W.3d at 753. Asserting immunity under section 101.106, Lowry and Thomas filed a motion for summary judgment with evidence attached. *Id.* at 754. The trial court granted summary judgment on some of Pearce's claims. *Id.* The Waco Court of Appeals reversed the trial court's decision, in part, concluding that Lowry and Thomas had established their entitlement to section 101.106 immunity for all of Pearce's claims against them and calling attention to the specific items of summary judgment evidence establishing each requirement of section 101.106 immunity. *Id.* at 755. Specifically, the Court noted that the "same subject matter" requirement had been met because Lowry and Thomas offered summary judgment evidence that the claims against Lowry, Thomas, the school, and MHMR, arose out of "Robert's death and the sur-

rounding events." *Id.*[1]

### c. Status as Government Employee

In addition to analyzing the "same subject matter" issue, we must consider that section 101.106 requires the action to be against an employee of the governmental unit. Under the Tort Claims Act, "a person, including an officer or agent, who is in the paid service of a governmental unit" is included in the definition of an employee, but "any person who performs tasks the details of which the governmental unit does not have the legal right to control" is expressly excluded. Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2); *see, e.g., Thompson v. Travelers Indem. Co. of Rhode Island,* 789 S.W.2d 277, 278–79 (Tex.1990); *Xeller v. Locke,* 37 S.W.3d 95, 98 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). However, the exercise of independent, professional judgment does not necessarily exclude someone from the definition of an employee. In *Murk v. Scheele,* 120 S.W.3d 865 (Tex.2003), the Texas Supreme Court held:

> [t]he Act's definition of 'employee' does not require that a governmental unit control *every* detail of a person's work. The operator of a motor vehicle, for example, must exercise independent judgment, but this does not mean that he or she cannot be considered an employee under the Act. If it did, a governmental unit could never 'be liable for ... injury ... proximately caused by ... the negligence of an employee ... aris[ing] from the operation or use of a motor-driven vehicle' even though section 101.021(1) of the Act provides for such liability.'

*Id.* at 867 (emphasis original) (holding a physician who exercised independent, professional judgment while serving as a paid physician for the University of Texas Health Center was an employee of UT for purposes of section 101.106).

### d. Scope of Bar under Section 101.106

 "Section 101.106 clearly states that a judgment in an action involving a governmental unit *bars any action* against the employee." *Owens,* 915 S.W.2d at 216 (emphasis original) (quoting *Oldham,* 895 S.W.2d at 355). There is no requirement that the suit against the employee be brought under the Tort Claims Act for the action against the employee to be barred. Instead, the statute requires that the employee's act gave rise to the claim against the governmental unit under the Act. *Annis,* 864 S.W.2d at 130; *see Schauer, v. Morgan,* 175 S.W.3d 397, 401 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Hallmark v. City of Fredericksburg,* 94 S.W.3d 703, 710 (Tex.App.-San Antonio 2002, pet. denied). Additionally, unlike other provisions of the Tort Claims Act, section 101.106 does not say that the provision applies only when the employee acts within the scope of his employment or in good faith. *Owens,* 915 S.W.2d at 216. Courts have even extended section 101.106 to intentional torts. *See Hallmark,* 94 S.W.3d at 710; *Liu,* 88 S.W.3d at 744; *Brand v. Savage,* 920 S.W.2d 672, 674–75 (Tex.App.-Houston [1st Dist.] 1995, no writ). Furthermore, section 101.106 applies to claims brought against defendants in their individual capacity as well as their official capacity. *See Bossley,* 968 S.W.2d at 344;

---

1. Because the Texas Supreme Court did not further define an "occurrence" in *Bossley,* other Texas courts have applied the res judicata factors to determine whether two causes of action involve the "same subject matter." *See McGowen,* 120 S.W.3d at 459; *see also*

*Waxahachie Indep. Sch. Dist. v. Johnson,* 181 S.W.3d 781 (Tex.App.-Waco 2005, pet. filed). We decline to utilize this analysis and, instead, apply this Court's conclusions in *White v. Annis. See White,* 864 S.W.2d at 131.

*Schauer,* 175 S.W.3d at 401–02; *Hallmark,* 94 S.W.3d at 709.

### B. Common–Law Official Immunity

#### 1. Distinguished from Sovereign Immunity

 Welch and James argue, in the alternative, that the trial court's denial of summary judgment was erroneous because they established that they were entitled to common-law official immunity. Texas courts have long recognized common-law official immunity for a variety of public officials. *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 423 (Tex.2004). Common-law official immunity is based on the necessity of public officials to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation. *Id.* at 424; *see Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994); *Baker v. Story,* 621 S.W.2d 639, 643–44 (Tex.Civ.App.-San Antonio 1981, writ ref'd n.r.e.). The concept of common-law official immunity is separate and distinct from sovereign immunity. Common-law official immunity protects individual officials from liability while sovereign immunity protects governmental entities from liability. *See Kassen,* 887 S.W.2d at 8; *Baker,* 621 S.W.2d at 643. The purpose of common-law official immunity is to protect public officials from being forced to defend their decisions that were reasonable when made, but upon which hindsight has cast a negative light. *Telthorster v. Tennell,* 92 S.W.3d 457, 463 (Tex.2002).

#### 2. Elements of Defense and Burden

 Common-law official immunity is an affirmative defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex. 1994); *Perry v. Texas A & I Univ.,* 737 S.W.2d 106, 110 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.). This defense pro-tects government employees from suit arising from performance of their (1) discretionary duties (2) performed in good faith and (3) within the scope of their authority. *Ballantyne,* 144 S.W.3d at 422; *Chambers,* 883 S.W.2d at 653; *Freeman v. Wirecut E.D.M., Inc.,* 159 S.W.3d 721, 729 (Tex.App.-Dallas 2005, no pet.). The burden is on the defendant to establish all elements of the defense. *Chambers,* 883 S.W.2d at 653; *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

#### a. Discretionary Duties

 An action is considered discretionary if it involves personal deliberation, decision, and judgment. *Chambers,* 883 S.W.2d at 654; *Ramos v. Tex. Dep't of Pub. Safety,* 35 S.W.3d 723, 727 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). In determining if an act is discretionary, the issue is whether an employee was performing a discretionary function, not whether he had the discretion to do an allegedly wrongful act while discharging that function or whether the employee's job description included discretionary duties. *Chambers,* 883 S.W.2d at 653; *Ramos,* 35 S.W.3d at 727. "Discretionary acts are those related to determining what the policy of the governmental unit will be, but do not extend to the carrying out of the specifics of particular policies or exercise of 'professional' or 'occupational' discretion." *Garza v. Salvatierra,* 846 S.W.2d 17, 22 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.) (quoting *Christilles v. Southwest Tex. State Univ.,* 639 S.W.2d 38, 42 (Tex. App.-Austin 1982, writ ref'd n.r.e.).

#### b. Good Faith

 To determine whether a public official acted in good faith, this Court applies an objective standard and must determine whether a reasonably prudent official, under the same or similar cir-

cumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Chambers*, 883 S.W.2d at 656; *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex.2004); *Ballantyne*, 144 S.W.3d at 426; *Telthorster*, 92 S.W.3d at 465; *Freeman*, 159 S.W.3d at 729. The standard of good faith as an element of common-law official immunity is not a test of carelessness or negligence, or a measure of an official's motivation. *Joe*, 145 S.W.3d at 164; *Ballantyne*, 144 S.W.3d at 426. Additionally, "[t]his test of good faith does not inquire into 'what a reasonable person *would have done*,' but into 'what a reasonable [person] *could have believed*.'" *Ballantyne*, 144 S.W.3d at 426; *Telthorster*, 92 S.W.3d at 465 (emphasis original). It does not require the official to show that all reasonably prudent officials would have made the same decision. Rather, the official must only show that a reasonable officer, possessing the same information he had at the time, could have believed his conduct was lawful. *Chambers*, 883 S.W.2d at 656; *Bowles v. Yeganeh*, 84 S.W.3d 252, 254 (Tex.App.-Dallas 2002, no pet.); *Smith v. Davis*, 999 S.W.2d 409, 415 (Tex.App.-Dallas 1999, no pet.).

 "Once the defendant presents proof that a reasonable officer in the same or similar circumstances would have taken the same action, the burden shifts to the plaintiff to show that no reasonable officer in the defendant's position could have thought the facts were such they justified the defendant's act." *Smith*, 999 S.W.2d at 415 (quoting *Chambers*, 883 S.W.2d at 657). "[P]robative evidence on the issue of good faith is limited to objective evidence." *Ballantyne*, 144 S.W.3d at 428; *see Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997); *Freeman*, 159 S.W.3d at

730. In *Wadewitz*, the Texas Supreme Court concluded that "a court must measure good faith in official immunity cases against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind." *Ballantyne*, 144 S.W.3d at 428 (quoting *Wadewitz*, 951 S.W.2d at 466); *accord Chambers*, 883 S.W.2d at 656.

### c. Scope of Authority

 Finally, in addition to the foregoing, a government official must demonstrate that he was acting within the scope of his authority to be entitled to common-law official immunity. Public officials act within the scope of their authority if they are discharging the duties generally assigned to them. *Ballantyne*, 144 S.W.3d at 424; *Chambers*, 883 S.W.2d at 658. "The fact that a specific act that forms the basis of the suit may have been wrongly or negligently performed does not take it outside of the scope of authority." *Wethington v. Mann*, 172 S.W.3d 146, 152 (Tex. App.-Beaumont 2005, no pet.) (quoting *Koerselman v. Rhynard*, 875 S.W.2d 347, 350 (Tex.App.-Corpus Christi 1994, no writ)).

The "scope of authority" requirement was recently addressed by the Texas Supreme Court in *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004). In order to evaluate the case before us, we carefully set out the steps taken by the Supreme Court in its analysis of this issue.

Joe was a shareholder in a law firm. Also, he served as a member of the Irving City Council. At a city council meeting, Joe voted in favor of an ordinance that adversely affected a client of his law firm. When the client, Two Thirty Nine Joint Venture, sued Joe and his law firm, Joe moved for summary judgment based on common-law official immunity. The client

then requested a continuance to conduct discovery, which the trial court denied, and Joe's motion for summary judgment was granted. Later in the litigation, his law firm's motion for summary judgment was also granted. This Court reversed the trial court's judgment in favor of Joe because we concluded that the trial court abused its discretion in denying the client's motion for a continuance to obtain discovery before the summary judgment hearing. *Id.* at 159. The judgment in favor of Joe's law firm was reversed since we concluded that fact issues existed. *Id.* Thereafter, Joe and his law firm petitioned the Texas Supreme Court for review.

The Supreme Court disagreed with this Court, reversed, and rendered judgment that the client take nothing. In doing so, the Supreme Court addressed the merits of Joe's claim of official immunity and examined the summary judgment evidence offered by the parties. *Id.* at 162.

The opinion reflects that Joe offered his affidavit in support of his motion for summary judgment. In his affidavit, Joe explained that voting on ordinances was within the scope of his authority as a member of the city council and that, prior to voting on the ordinance at issue, he conducted legal research with the assistance of his firm's librarian to study the legality of the ordinance. *Id.* at 163. In response, the client argued that Joe's legal research was inappropriate because his actions went beyond the scope of his authority as a member of the city council. In support of its position, the client offered the affidavit of one of the principals of the client. In his affidavit, the principal stated his belief that "Joe requested that legal research be performed at [his law firm] for the purpose of advising the Irving City Council of the power of the City Council to impose the moratorium and supporting the citizens group favoring the moratorium." *Id.* at 164. The client argued that Joe's actions created attorney-client relationships between Joe and the City of Irving and between Joe and the citizens group, which were in conflict with his obligations to his own firm's client. *Id.*

Based on their review of the summary judgment evidence offered by the parties, the Supreme Court concluded that the client's evidence did not create a fact issue as to whether Joe was acting beyond the scope of his authority as a member of the city council. *Joe*, 145 S.W.3d at 163–64. Specifically, the Court determined that the client merely speculated about the existence of an attorney-client relationship between Joe and the citizen's group. *Id.* at 164. That speculation was not evidence. *Id.* Furthermore, the Court concluded that conducting legal research in preparation for a city council vote does not create an attorney-client relationship and sharing the information with fellow council members does not change that conclusion. *Id.* at 164.

## V. APPLICATION TO FACTS

### A. Section 101.106

To meet their motion for summary judgment burdens, Welch and James must establish immunity under section 101.106 immunity as a matter of law by presenting uncontroverted summary judgment evidence on each element of the defense. *See Roark*, 813 S.W.2d at 494. Accordingly, we review the motions for summary judgment and the responses filed with the trial court.

The record reflects that James offered summary judgment evidence, which included: the affidavit of his expert, Charles M. Groomer, Article IV of the Town of Flower Mound Town Charter, and section 2–231 of the Town of Flower Mound Code of Ordinances. Summary judgment evidence of-

fered by Welch included the affidavit of his expert, Dorothy Palumbo, and section 4.05 of the Flower Mound Town Charter. Welch and James argued that section 4.05 of the Flower Mound Town Charter establishes Welch's status as an employee of the Town to which immunity applies. Also, Welch and James directed the trial court to this Court's memorandum opinion regarding the Town's plea to the jurisdiction. They asserted that because we sustained the Town's plea, there has been a judgment in the action against the Town and that Milton's claims against them are barred by section 101.106. Further, they asserted generally in their motions for summary judgment that Milton's own pleadings reflect his claims against them involve the same subject matter as his claims against the Town.

In response, Milton offered to the trial court this Court's memorandum opinion rendering final judgment in favor of the Town and the deposition testimony of Dorothy Palumbo, Welch's expert, to support his position that this case does not involve the same subject matter as the suit against the Town. He contends that in the suit against the Town, he alleged the negligent use of a facsimile transmission machine and negligent supervision of Town's employees, while the claims in this case all arose out of the alleged formation of an attorney-client relationship between Welch and Milton. According to Milton, all the claims in this case arose from facts that are separate and distinct from the claims against the Town.

Additionally, to support his assertion that Welch is not an employee to which section 101.106 immunity applies, Milton offered the affidavit of his expert, Emeritus Professor of Law Walter W. Steele, Jr., and the deposition testimony of Welch's expert, Dorothy Palumbo. Professor Steele testified that Welch formed a

personal attorney-client relationship with Milton, and was acting as Milton's personal attorney. Milton characterizes Palumbo's testimony as stating that if Welch had entered into a personal attorney-client relationship with Milton, he could not have been acting as an employee of the Town. Milton contends, under those circumstances, Welch could not be the Town's employee because the Town would not have the right to control the details of his professional discretion as an attorney while he was advising Milton. Specifically, Milton offered this excerpt from Palumbo's deposition:

Q: Okay, would you agree with me that if Terry Welch undertook to represent someone else in their personal capacities that he would not be acting as town attorney in that instance?

A: Hypothetically, if he undertook to represent someone—and I assume you're saying an employee of the Town—on a personal legal matter, he would not be acting on the Town's behalf.

■■■ We conclude, on this record, Welch and James have not offered evidence establishing the elements of section 101.106 immunity. Welch and James only offered evidence of their duties in their respective positions with the Town. Also, they addressed Milton's allegation that Welch is not an employee to which section 101.106 immunity applies by merely offering the section of the Town Charter describing the town attorney's job responsibilities and then making conclusory statements that Welch is a Town employee because, under the Town Charter, he is under the control of the Town. Critical here is the failure of Welch and James to address, with facts, Milton's allegation that a personal attorney-client relationship was formed between Welch and Milton and that such a relationship would

remove Welch from the definition of an employee under section 101.106. Welch and James made only general arguments contending that neither Welch's personal discretion as an attorney, nor the alleged formation of an attorney-client relationship between Welch and Milton would remove him from the definition of an employee.

While application of section 101.106 is not limited to situations where the employee acts within the scope of his employment or in good faith, it does require that the actor is an employee of the governmental unit and that the governmental unit has the right to control the details of the tasks performed by the employee. *Owens*, 915 S.W.2d at 216; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106. The evidence offered by Milton where he states Welch acted as his attorney, demonstrates the existence of a fact issue on the question of whether Welch was acting as a Town employee at that time.

Furthermore, we conclude Welch and James have not offered evidence demonstrating that this lawsuit involves the same subject matter as the suit against the Town. In support of their contention that the suits involve the same subject matter, Welch and James offered nothing more than a summary of the cases interpreting the "same subject matter" requirement and the conclusory statement that "the allegations against James, Welch, and the Town all arise out of the investigation and ultimate termination of Milton." Welch and James have not directed this Court to evidence in the record supporting their contention. *See Hope's Fin. Mgmt.*, 172 S.W.3d at 108; *Jackson*, 732 S.W.2d at 412.

On this point, it is our task to determine whether there exists uncontroverted summary judgment evidence establishing the elements of section 101.106 immunity. *See*

*Roark*, 813 S.W.2d at 494; *Lowry*, 72 S.W.3d at 755. Where, as here, the conclusion offered by the summary judgment movant is refuted by evidence offered by the respondent thereby demonstrating the existence of a fact issue, the movant on a traditional motion for summary judgment has not met its burden. *See Centeq Realty, Inc.*, 899 S.W.2d at 197; *'Moore' Burger*, 492 S.W.2d at 936–37. Therefore, we conclude Welch and James have not met their burden of establishing each element of section 101.106 immunity as a matter of law. The trial court did not err in denying their motion for summary judgment on this ground.

### B. Common–Law Official Immunity

Alternatively, Welch and James argue that they are entitled to summary judgment on their claim of common-law official immunity. In support of their position that they are entitled to common-law official immunity, Welch and James ask us to focus on the good faith element of this three-part test. However, we need not address good faith because Milton has raised an issue of material fact at least, as to the element of "scope of authority."

Milton offered his affidavit in which he stated that in a meeting between Milton, James, and Welch, James told him that Welch would advise him regarding the investigation, which indicated to him that James had appointed Welch to serve as his personal attorney in the investigation and that Welch consented to the representation. In this affidavit, Milton said that, based on James's statement that Welch would advise him, he sought personal legal advice from Welch regarding appropriate conduct in the investigation. No objection was made to this affidavit, nor was there any contrary evidence offered by appellants. Further, as observed above, Emeritus Professor of Law Walter Steele testi-

fied in his affidavit to his opinion that, based on his experience, Milton's affidavit, and Milton's petition, Welch personally represented Milton. Dorothy Palumbo, Welch's expert, also testified in her deposition that Welch would not be acting within the scope of his authority as Town Attorney if he undertook a personal representation of Milton.

The foregoing reflects a genuine issue of material fact respecting the "scope" element of common-law official immunity as to Welch. Additionally, because Milton alleged James aided and abetted in the breach of Welch's fiduciary duties, the same issue of material fact on the "scope" element exists as to James. Since Welch and James failed to establish all three elements of common-law official immunity as a matter of law, the trial court did not err in denying their motions for summary judgment.

### C. Bickerstaff's Motion for Summary Judgment

Bickerstaff argues that the trial court erred in denying its motion for summary judgment based on Welch's immunity under section 101.106 of the Texas Tort Claims Act, or alternatively because Welch is entitled to common-law official immunity. All of Milton's claims against the Bickerstaff law firm are derivative of Milton's claims against Welch. Because we have concluded that the trial court did not err in denying Welch's motion for summary judgment as to either ground of immunity, Bickerstaff is not entitled to summary judgment.

### VI. CONCLUSION

Welch, James, and Bickerstaff failed to show that they are entitled to summary judgment based upon immunity afforded by section 101.106 of the Texas Tort Claims Act or pursuant to common-law official immunity. Accordingly, we affirm the trial court's denial of appellants' motions for summary judgment.