**Garland D. ANDERSON, M.D., Randal J. Urban, M.D., Billy U. Philips, Ph.D., Vicente A. Resto, M.D., Henry F. Epstein, M.D., David H. Walker, M.D., Courtney M. Townsend, Jr., M.D., and Robert M. Hirschfeld, M.D., Appellants,**

v.

**David BESSMAN, M.D., Hari Dayal, Ph. D., S. David Hudnall, M.D., Golda Anne Kevetter Leonard, Ph.D., Gregg T. Nagle, Ph.D., William H. Nealon, M.D., Brian Peerce, Ph.D., Nancy K. Wills, Ph.D., and Charles E. Holzer III, Ph.D., Appellees.**

No. 01–11–00303–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 10, 2011.

pages/int_rates/index.html (last visited Oct. 11, 2011).

Beth Ellen Klusmann, Austin, TX, for Appellants.

Timothy A. Beeton, Simpson & Beeton, Galveston, TX, Micky N. Das, Tyler & Das, Jocelyn Annette Holland, McLeod, Alexander, Powell & Apffel, P.C., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices BLAND and HUDDLE.

## OPINION

JANE BLAND, Justice.

Due to financial exigencies that Hurricane Ike created, the University of Texas Medical Branch at Galveston ("UTMB") terminated a number of its faculty positions. The medical school's provost coordinated the termination process, and department chairs recommended faculty members from their departments for termination. A group of faculty members,[1] whose positions the school terminated, sued the provost and several department chairs (collectively, "the administrators"),[2] asserting various tort claims. Relying on section 101.106(f) of the Texas Tort Claims Act, the administrators moved to dismiss the suit brought against them. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f) (West 2010). The trial court denied the motion. On appeal, the administrators contend that the trial court erred in refusing to dismiss the claims against them because the decisions they made and carried out fell within the scope of their employment, and thus section 101.106(f) precludes a suit against them in their individual capacities. We agree. Accordingly, we reverse and remand with instructions for the trial court to dismiss the claims against the administrators.

## Background

In September 2008, Hurricane Ike struck Galveston Island. The hurricane damaged UTMB facilities and interrupted its operations and services. As a result, the Board of Regents declared a state of financial exigency. It instructed UTMB to cut approximately 3,000 full-time faculty and staff positions.

The Rules and Regulations of the Board of Regents provide the process for elimi-

---

1. David Bessman, M.D., Hari Dayal, Ph.D., S. David Hudnall, M.D., Golda Anne Kevetter Leonard, Ph.D., Gregg T. Nagle, Ph.D., William H. Nealon, M.D., Brian Peerce, Ph.D., Nancy K. Wills, Ph.D., and Charles E. Holzer III, Ph.D.

2. The provost is Garland Anderson, M.D., and the group of department chairs includes Randal J. Urban, M.D., Billy U. Phillips, Ph.D., Vicente A. Resto, M.D., Henry F. Epstein, M.D., David H. Walker, M.D., Courtney M. Townsend, Jr., M.D., and Robert M. Hirschfeld, M.D.

nating academic positions due to financial exigency. Rule 31003 provides:

3.1 Committee Recommendations. Upon determining the existence of a financial exigency and the need to reduce academic positions or academic programs, or both, the president ... shall appoint a committee composed of faculty and administrative personnel to make recommendations to the president as to which academic position and and/or academic programs should be eliminated. . . .

3.2 Assessment of Academic Program. The committee will review and assess the academic programs ... and identify those academic positions that may be eliminated with minimum effect upon the degree programs that should be continued. The review will include, but not be limited to, an examination of the course offerings, degree programs, teaching specialties, and semester credit hour production.

3.3 Review consideration. Upon determining that one or more academic positions in a degree program or teaching specialty should be eliminated, the committee will recommend the particular position or positions to be terminated by reviewing the academic qualifications and talents of holders of all academic positions in those degree programs or teaching specialties, the needs of the program they serve, past academic performance, and the potential for future contributions to the development of the institution. . . .

3.4 Tenure Preference. If, in the opinion of the committee, two or more faculty members are equally qualified and capable of performing a particular teaching role, the faculty member or members having tenure shall be given preference over non-tenured faculty. . . .

3.5 Recommendation. Upon completion of its review, the committee shall promptly recommend to the president those persons who may be terminated, ranked in order of priority, with the reasons for their selection. The president shall ... determine which academic positions are to be terminated because of the financial exigency and shall give the holders of these positions written notice of the decision.

David Callender, UTMB's President, instructed the UTMB Provost, Garland Anderson, to recommend the faculty positions to terminate. Pursuant to this directive, Anderson met with the UTMB department chairs, including his co-defendants, and instructed them to recommend which faculty members to terminate from their respective departments. Routinely, UTMB department chairs evaluate department members' performance; occasionally, department chairs recommend promotions or terminations within the department. Anderson asked the department chairs to categorize members of their department into three groups: (1) group "A" to include members crucial to the proper functioning of the department; (2) group "B" to include members important to the department; (3) and group "C" to include non-critical members whose loss would cause the least disruption to the department.

At President Callender's further instruction, Anderson appointed a six-member faculty committee to review the department chairs' recommendations. During the review, the department chairs explained their rationales for placing individuals in group "C". The committee questioned the department chairs about their selections and deliberated privately. The committee then submitted a list of faculty members recommended for termination to Provost Anderson. Anderson delivered the list to President Callender. President

Callender fired the listed faculty members, including the faculty members who brought this suit.

All of the faculty members who are party to this suit, save two, appealed President Callender's decision to a faculty appeals committee. The appeals committee concluded that Hurricane Ike had caused UTMB to experience a financial exigency and that the decision to eliminate their positions as faculty was neither arbitrary nor unreasonable. The appeals committee recommended that President Callender uphold each termination. President Callender accepted the recommendation.

In November 2010, some of the aggrieved faculty members filed this suit for tortious interference with an employment relationship, negligent misrepresentation, negligence, fraud, and civil conspiracy. The faculty members allege that the administrators violated Rule 31003, terminated faculty positions based on financial incentives and personal animosities, and had acted in bad faith in recommending their termination.

The administrators moved to dismiss the suit against then, asserting that it was, as a matter of law, brought against them in their capacities as UTMB employees. They requested that the trial court order the faculty members to substitute UTMB as the defendant or suffer dismissal of the suit under the election of remedies provision of the Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f) (allowing governmental employee to force claimant to dismiss employee and name governmental employer as defendant instead by demonstrating that conduct at issue was within scope of his or her employment). The faculty members responded that the administrators' conduct did not fall within the scope of their employment.

The parties proffered evidence in connection with the jurisdictional challenge.

*See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Anderson testified by deposition that Rule 31003 prescribes procedures for terminating academic positions in light of a financial exigency. Anderson wrote to President Callender that the list he had prepared complies with Rule 31003. In an affidavit in the trial court, Anderson also averred that he had fired faculty as a part of his duties as Provost of UTMB, and he exercised these duties at President Callender's direction. But he admitted that he told one department chair not to recommend a newly hired faculty member for termination. Also, at President Callender's request, Anderson removed a faculty member from the termination list. According to Anderson, personal animosity existed between certain department chairs and some of the faculty members whose positions he terminated. In one instance, a department chair recommended a faculty member for termination, because his patients had a higher rate of complications and longer hospital stays than another similarly situated faculty member. Anderson acknowledged that ·he and the department chairs had received bonuses, in part, because UTMB met certain financial objectives in 2009.

## Discussion

### *Standard of Review*

██ A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear the case. *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554; *Kamel v. Univ. of Tex. Health Sci. Ctr.,* 333 S.W.3d 676, 681 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). The existence of subject-matter jurisdiction is a question of law that we review de novo. *State ex rel. State Dep't of Hwys. & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *Kamel,*

333 S.W.3d at 681. We may not presume the existence of subject-matter jurisdiction; the burden is on the plaintiff to allege facts affirmatively demonstrating the trial court's subject-matter jurisdiction over the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44, 446 (Tex.1993); *Kamel*, 333 S.W.3d at 681. In deciding a plea to the jurisdiction, a court may not consider the case's merits, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002); *Kamel*, 333 S.W.3d at 681.

### Section 101.106(f) of the Texas Tort Claims Act

 Section 101.106(f) provides:

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f). Thus, a defendant is entitled to dismissal under section 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the government unit under the Tort Claims Act. *Id.; see also Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex.2011); *Univ. of Tex. Health Sci. Ctr. v. Bailey*, 332 S.W.3d 395, 401 (Tex.2011). The first

component encompasses two inquiries: whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time. *See Poland v. Willerson*, No. 01–07–00198–CV, 2008 WL 660334, at *4 (Tex. App.-Houston [1st Dist.] March 13, 2008, pet. denied); *Turner v. Zellers*, 232 S.W.3d 414, 417 (Tex.App.-Dallas 2007, no pet.). The statute strongly favors dismissal of governmental employees. *Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 785 (Tex.App.-Waco 2005, pet. denied).

### Scope of Employment

It is undisputed that UTMB, a governmental entity, employed the administrators. Accordingly, we turn to whether the administrators acted within the scope of their employment when they recommended that the faculty members' positions be terminated.

The Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(5). *Compare Poland*, 2008 WL 660334, at *7 (holding that doctor, who was supposedly negligent in performing surgery on patient, acted in the scope of employment within meaning of Act because he averred that he provided medical care in course and scope of employment with governmental unit) *and Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 883 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that off-duty police officer, who rear-ended another car, acted in scope of employment within meaning of Act because officer was checking license number of different vehicle to determine whether it was stolen when accident hap-

pened) *with Kelemen v. Elliott,* 260 S.W.3d 518, 524 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (finding no evidence that officer was acting in scope of employment when he kissed fellow officer without consent while on duty) *and Terrell ex rel. Estate of Terrell v. Sisk,* 111 S.W.3d 274, 278 (Tex.App.-Texarkana 2003, no pet.) (holding that employee, who killed person with car, did not act in scope of employment because she was on her way to personal appointment in her own car).

The faculty members maintain that the administrators acted outside the scope of their employment because they acted without authority. According to the faculty members, the department chairs did not use Rule 31003 factors to decide whom to recommend to fire. In addition, they allege that Anderson did not allow the review committee to properly review the department chairs' recommendations because the review committee considered only faculty members whom the department chairs had categorized as non-critical members.

■■■■ "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994) (finding that on-duty police officers, pursuing suspect in squad car, did not act outside scope of authority in driving without regard for safety of others); *see also Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 425 (Tex.2004) (holding that members of city's Board of Adjustment acted within scope of authority in revoking building permit even though court had found that members were incorrect in revoking permit); *Arbelaez v. Just Brakes Corp.,* 149 S.W.3d 717, 723 n. 7 (Tex.App.-Austin 2004, no pet.) ("We have been unable to find a single case in Texas jurisprudence that supports the proposition that an employee is *not* within the course and scope of employment when the employee carries out the express instructions of his employer in an activity that benefitted, even indirectly, the employer's business."). Thus, we examine whether the administrators' acts fall within the duties generally assigned to them.

We conclude that they do. President Callender directed Provost Anderson to recommend faculty members to fire so that UTMB could make the required reductions in faculty. Anderson directed the department chairs to assess faculty members based on their respective department's needs. Part of a department chair's job is to evaluate the performance of the faculty members in their department. At President Callender's request, Anderson chose a committee to review the department chairs' recommendations. Each of the administrators' challenged acts fall within these tasks—ones, without exception, assigned to them by a competent authority for the benefit of UTMB. Rule 31003 governs the conduct of the President and the review committee in terminating faculty members in a financial exigency. But Rule 31003 governs neither the department chairs nor the provost in this matter. It does not, for example, preclude the President from requesting that the provost oversee the process for a reduction in number of faculty. Rule 31003 also does not preclude department chairs, at the provost's request, from categorizing faculty members to assist the review committee in its evaluation. No evidence exists that Anderson limited the factors that the review committee could use in its assessment.

■■■ The faculty members contend that the administrators acted outside the scope of their employment because they brought personal motives to bear in deciding who should be fired. So long as it falls within the duties assigned, an employee's conduct is "within the scope of employment," even

if done in part to serve the purposes of the employee or a third person. *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869, 872 (Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.) (employee's performance of duties to serve himself or a third person did not take him outside the scope of employment); *Best Steel Bldgs., Inc. v. Hardin*, 553 S.W.2d 122, 128 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.) ("The fact that the preponderate motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment."). If the purpose of serving the employer's business motivates the employee, his acts are within the scope of employment. *Best Steel Bldgs., Inc.*, 553 S.W.2d at 128; *Arbelaez*, 149 S.W.3d at 723. The administrators' actions here fall within the scope of their employment because they carried out their supervisors' directives for the benefit of UTMB—even if personal motives in part persuaded them in the performance of their duty. We hold that the faculty members have not alleged any acts against the administrators that fall outside the general scope of their employment. *See Chambers*, 883 S.W.2d at 658 (rejecting notion that high speed chase was outside the scope of police officer's work because they lacked discretion to drive in way that endangers others); *see also Ballantyne*, 144 S.W.3d at 425 (holding that members of city's Board of Adjustment acted within scope of authority in revoking building permit where statute conferred authority to revoke, even though court had determined that the Board was incorrect).

### Suit Could Have Been Brought under the Act against UTMB

Given that the pleadings allege acts within the course and scope of the administrators' employment, the faculty members' suit could have been brought under the Tort Claims Act against UTMB. *See* Tex.

Civ. Prac. & Rem.Code Ann. § 101.106(f); *Franka*, 332 S.W.3d at 375. In *Franka*, the Texas Supreme Court construed the phrase "could have been brought" in section 101.106(f), holding that, " 'all common-law tort theories alleged against a governmental unit are assumed to be 'under the Tort Claims Act' for purposes of section 101.106.' " *Id.* at 369 (quoting *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex.2008)).

The faculty members' causes of action are tort claims. Because we have rejected their contention that the administrators' actions were outside the scope of their employment, we hold that the faculty members' suit could have been brought under the Act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex.2009) (holding that suit alleging that official acted without authority "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act"). Section 101.106(f) applies, and dismissal of the administrators is proper.

### Conclusion

We hold that the administrators acted within the scope of their employment. Thus, the faculty members' suit against UTMB could have been brought under the Texas Tort Claims Act. Because the administrators met both requirements of section 101.106(f), the trial court erred in denying their motion to dismiss. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f). We therefore reverse the order of the trial court and remand the case with instructions for the trial court to dismiss the claims against the administrators.