ACCEPTED
01-14-00990-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/23/2015 11:52:38 AM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00990-CV

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/23/2015 11:52:38 AM
CHRISTOPHER A. PRINE
Clerk

MANFRED FINK,

*Appellant*,

v.

JOANNA D. ANDERSON, ET AL.,

*Appellant*.

ON APPEAL FROM THE 152ND JUDICIAL DISTRICT COURT
HARRIS COUNTY, TEXAS
CAUSE NO. 2014-22740

## APPELLEES' BRIEF

Wade T. Howard
State Bar No. 00787725
Michael P. Cash
State Bar No. 03965500
Alma F. Gomez
State Bar No. 24069800
**Liskow & Lewis**
1001 Fannin Street, Suite 1800
Houston, Texas 77002-6756
(713) 651-2900 (Telephone)
(713) 651-2908 (Facsimile)
Email: wthoward@liskow.com
Email: mcash@liskow.com
Email: afgomez@liskow.com
**ATTORNEYS FOR APPELLEES**

*Oral Argument Requested*

# TABLE OF CONTENTS

I.  Statement of the Case ...................................................................................6

II.  Statement Regarding Oral Argument .................................................6

III.  Statement of Facts...........................................................................................7

IV.  Standard of Review...........................................................................................9

V.  Summary of Argument .......................................................................................10

VI.  Argument ....................................................................................................11

    A.  Scope of Employment ..........................................................................11

    B.  Appellant Was Not Acting Within the Course and Scope of His Employment as a Physics Professor With the University When He Committed Fraud in Connection With His Attempts to Solicit Investments For IsoSpec. .....................16

        1.  Soliciting Investments for a Private Company and Committing Fraud in the Course of Such Solicitations is Entirely Unrelated to and Exceeds the Scope of Appellant's General Duties as a Physics Professor for the University.......................................17

        2.  Assuming Appellant's Scope of Employment with the University Could be Expanded by the Patent Licensing Agreement Between the University and IsoSpec, Such Expanded Scope is Limited by the Terms of the Agreement. ..........................................22

    C.  A Fact Issue Exists as to Whether Appellant Was Acting Within the Scope of His Employment. ..............................24

    D.  Appellant Cannot Establish That Appellees' Suit Could Have Been Brought Against the University Under the Tort Claims Act. ...............................................................27

VII.  Conclusion .............................................................................................30

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. Walker*, 435 S.W.3d 789 (Tex. 2014)..................................................29

*Anderson v. Bessman*, 365 S.W.3d 119 (Tex. App.—Houston [1st Dist.] 2011, no pet.)........................................................................................... 16, 28

*Bagg v. Univ. of Texas Med. Branch*, 726 S.W.2d 582 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) ...............................................................14

*Camacho v. Samaniego*, 954 S.W.2d 811 (Tex. App.—El Paso 1997, pet. denied) ................................................................................................................14

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) ...............................12

*Clark v. Univ. of Tex. Health Science Ctr.*, 919 S.W.2d 185 (Tex. App.—Eastland 1996, writ denied) ...................................................................... 13, 16

*Cobb v. Harrington*, 190 S.W.2d 709 (Tex. 1945).................................................15

*Davis v. Klevenhagen*, 971 S.W.2d 111 (Tex. App.—Houston [14th Dist.] 1998, no pet.)..............................................................................................15

*Durand v. Moore*, 879 S.W.2d 196 (Tex. App.—Houston [14th Dist.] 1994, no writ) ..............................................................................................15

*Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011)................................... 11, 13, 29

*Griffin v. Hawn*, 341 S.W.2d 151 (Tex. 1960) ......................................................14

*Kelemen v. Elliot*, 260 S.W.3d 518 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ................................................................................................................16

*Kelly v. Galveston Cnty.*, 520 S.W.2d 507 (Tex. App.—Houston [14th Dist.] 1975, no writ) ..............................................................................................13

*Kersey v. Wilson*, 69 S.W.3d 794 (Tex. App.—Fort Worth 2002, no pet.).............15

*Lenoir v. Moore*, Cause No. 01-13-01034-CV, 2014 Tex. App. LEXIS 12703 (Tex. App.—Houston [1st Dist.] November 25, 2014, no pet.)...................................15

*Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760 (Tex. App.—San Antonio 2002, pet. denied) ............................................................................... 14, 16

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 235 S.W.3d 653 (Tex. 2008)29, 30, 31

*Molina v. Alvarado*, 441 S.W.3d 578 (Tex. App.—Texarkana Apr. 23, 2014, pet. filed). ..................................................................................................... 12, 25

*Phelan v. Norville*, No. 07-13-00040-CV, 2014 Tex. App. LEXIS 10560 (Tex. App.—Amarillo Sept. 22, 2014, no pet.) ...........................................................16

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ....................................................21

*Russell v. Edgewood Indep. School Dist.*, 406 S.W.2d 249 (Tex. Civ. App. San Antonio 1966) ...................................................................................................13

*State Bar of Tex. v. Heard*, 603 S.W.2d 829 (Tex.1980).......................................11

*State ex rel. State Dep't of Hwys & Pub. Transp. V. Gonzalez*, 82 S.W. 3d 322 (Tex. 2002) .........................................................................................................11

*Telthorster v. Tennell*, 92 S.W.3d 457 (Tex. 2002) .................................................12

*Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350 (Tex. 2013) .............27

*Wallace v. Moberly*, 947 S.W.2d 273 (Tex. App.—Fort Worth 1997, no writ)......13

*Weaver v. McKeever*, No. 01-12-00851-CV, 2014 Tex. App. LEXIS 2092 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014).........................................................29

*Welch v. Milton*, 185 S.W.3d 586 (Tex. App.—Dallas 2006, pet. denied) .............12

*Zarzana v. Ashley*, 218 S.W.3d 152 (Tex. App.—Houston [14th Dist.] 2007, no pet.).............................................................................................. 14, 16, 21

**Statutes**

Tex. Civ. Prac. & Rem. Code § 101.001(5)........................................................ 12, 23

Tex. Civ. Prac. & Rem. Code § 101.003 ..................................................................29

Tex. Rev. Civ. Stat. art. 581-29 ......................................................................... 21, 30

Tex. Rev. Civ. Stat. art. 581-4 ..................................................................................30

Texas Civil Practices and Remedies Code § 101.106(f) ................................. passim

**Other Authorities**

Texas Pattern Jury Charge 10.6 (2014) .................................................................27

# RECORD REFERENCES

The single volume of the clerk's record is cited by page number:  C.R. 14

NO. 01-14-00990-CV

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS

MANFRED FINK,

*Appellant*,

v.

JOANNA D. ANDERSON, ET AL.,

*Appellant*.

ON APPEAL FROM THE 152ND JUDICIAL DISTRICT COURT
HARRIS COUNTY, TEXAS
CAUSE NO. 2014-22740

**APPELLEES' BRIEF**

*To the Honorable Court of Appeals*:

Plaintiffs Joanna D. Anderson, Betty Bailey, Doug Bird, Ann Brown, Brad Bullock, M.D., Jim Byron, Mike Clann, Claire Crowder, Evan Quiros, Paul Fulmer, M.D., Eric Geibel, Mark Griffin, Steve Gerguis, Stacey Harvey, Bill Henderson, Allen Holt, Linda Hudson, Cullen Kappler, Ralph Kirkland, Sam Lo, M.D., Thomas Lu, M.D., Gail Miller Holt, Mary Quiros, Larry Sams, Bob Solberg, Lynn Whitt, and Clarissa Willis, M.D.'s ("Appellees") file this Brief in response to Defendant Manfred Fink, Ph.D.'s ("Appellant") Brief.

***Oral Argument Requested***

# I. Statement of the Case

**Nature of the Case:**
This is a securities fraud dispute arising out of the sale of limited partnerships in IsoSpec Technologies, L.P. ("IsoSpec") based on the fraudulent misrepresentations and/or omissions regarding the alleged existence of a fully functioning Raman spectrometer prototype named ANDRaS.

**Course of Proceedings:**
Appellees filed this lawsuit on April 24, 2014. (C.R. 4-8) Appellees subsequently filed a First Amended Petition on June 3, 2014 and a Second Amended Petition on July 9, 2014. (C.R. 53-60) On November 6, 2014, Appellant filed a Motion to Dismiss Based on Governmental Immunity, alleging that he is entitled to immunity pursuant to Section 101.106(f) of the Texas Civil Practice and Remedies Code because his conduct occurred within the scope of his employment as a physics professor at the University of Texas at Austin (the "University"). (C.R. 70-81)

**Trial Court Disposition:**
On December 11, 2014, the trial court signed an order denying Appellant's Motion to Dismiss Based on Governmental Immunity. (C.R. 313) This order is interlocutory and does not dispose of all parties and claims.

# II. Statement Regarding Oral Argument

This is a straightforward case in which Appellees do not see the need for oral argument:  the facts before the trial court were not complicated and the impact

of the case is limited to the parties. However, if the Court grants oral argument to Appellant, Appellees request the opportunity to participate. For these reasons, Appellees request oral argument.

### III. Statement of Facts

Appellees filed this lawsuit against Defendants Dr. Manfred Fink, Ph.D. and Dr. Rainer Fink, Ph.D. ("Defendants"), alleging Defendants committed fraud, violated the Texas Securities Act, and aided, abetted and conspired with others to commit fraud and violate the Texas Securities Act. Specifically, Appellees believe that in late 2010, Defendants developed a scheme to defraud Appellees and other investors of more than a million dollars.

Defendants and others in the Senior Management Team and Science and Engineering Team (the "Founders") created IsoSpec, a company located in Houston, Texas, which purported to specialize in developing highly advanced, patented, Raman Spectroscopy technology platforms. As one of the co-inventors on the Science and Engineering Team and as part of the Senior Management Team, Appellant and his son, Defendant Dr. Rainer Fink, respectively, were involved in the development and issuance of a Private Placement Memorandum ("PPM") in an effort to get investors, including Appellees, to purchase limited partnership interests in exchange for financial contributions. (C.R. 208-300) A

true and correct copy of the PPM is attached here as Tab 1 in Appellees' Appendix.

In the PPM, Appellees were told that IsoSpec already had a functioning prototype instrument developed, named ANDRaS, that performed measurements using Raman Spectroscopy. (C.R. 209) Specifically, the PPM stated: "ANDRaS is rugged, inexpensive, small and portable providing onsite analytical capabilities. Two operating prototype instruments have proven the accuracy and operating capabilities of ANDRaS." (*Id*.) The PPM promised Appellees that next generation instruments of ANDRaS, once fully developed and commercialized, could be used in a variety of industries, including the medical, environmental, energy and homeland security sectors. (*Id*.) It also stated: "It is believed that there is no commercial competition for ANDRaS." (*Id*.)

In addition to the statements made regarding the operational status of ANDRaS and the commercial uses therefore, the PPM contained a Limited Partnership Agreement and details regarding the offering being made to investors. The PPM stated that "this financing will be used to further develop and market the Raman Technology instruments and their applications." (C.R. 215).

In addition to the PPM, Appellees attended numerous partnership meetings between late 2010 and through 2012, at which Defendants[1] and the Founders made numerous misrepresentations and/or failed to disclose material facts regarding the actual state of the equipment and the steps being taken towards developing and commercializing ANDRaS. Appellant's Appendix: Tab 5 (Affidavit of Bob Solberg) at pp. 1-2; Tab 6 (Affidavit of Mark Griffin) at pp. 1-2; Tab 7 (Affidavit of William Hightower) at pp. 1-2. (C.R.174-180)

Based on misrepresentations made in the PPM, as well as other misrepresentations, many of which were made orally at the investment and partnership meetings, Appellees invested their money (totaling over a million dollars) in IsoSpec in exchange for limited partnership interests. *Id.*

In late 2012, Appellees began to question the validity of IsoSpec when certain milestones towards commercializing ANDRaS were not being met as promised in partnership memorandums. Ultimately, Appellees discovered that at no point did any fully functioning ANDRaS prototype ever exist, contrary to Defendants' and the Founders' repeated representations.

## IV. Standard of Review

Appellate courts review a motion to dismiss based on Texas Civil Practices and Remedies Code § 101.106(f) as a plea to the jurisdiction that challenges the

---

[1] It is undisputed that Appellant attended at least one of these meetings. *See* Appellant's Appendix, Tab 3 (Affidavit of Dr. Manfred Fink) at ¶ 6.

trial court's subject-matter jurisdiction to hear the case.  *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980).  The existence of subject-matter jurisdiction is a question of law that an appellate court reviews de novo.  *State ex rel. State Dep't of Hwys & Pub. Transp. V. Gonzalez*, 82 S.W. 3d 322, 327 (Tex. 2002).

## V.    Summary of Argument

The trial court did not err in denying Appellant's motion to dismiss based on governmental immunity.   The immunity afforded governmental employees by Section 101.106(f) of the Texas Tort Claims Act (the "TTCA") applies only in very limited circumstances.  Specifically, the employee must prove that (1) he was employed by the government at the time of the incident giving rise to the claim; (2) he was acting within the course and scope of his authority or employment; and (3) the plaintiff's claim could have been brought against the governmental employer under the TTCA.  Tex. Civ. Prac. & Rem. Code § 101.106(f); *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).  Here, Appellant is not entitled to governmental immunity because (1) Appellant's intentional acts or omissions which form the basis of this lawsuit took place during a course of conduct designed to obtain investments for IsoSpec, a private company, and thus lie outside the course and scope of his employment with the University; and (2) Appellant's suit could not have been brought against the University under the TTCA.  As such, the trial court's order dated December 11, 2014 should be affirmed.

## VI. Argument

Immunity under Section 101.106 is an affirmative defense which must be specifically pleaded, and the burden is on the employee to conclusively establish all elements as a matter of law. *Welch v. Milton*, 185 S.W.3d 586, 593, 599 (Tex. App.—Dallas 2006, pet. denied); *Molina v. Alvarado*, 441 S.W.3d 578, 581-582 (Tex. App.—Texarkana Apr. 23, 2014, pet. filed). The existence of a factual dispute will preclude a dismissal or summary judgment on immunity grounds. *Welch*, 185 S.W.3d at 593; *Molina*, 441 S.W.3d 578; 581-582; *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002).

### A. Scope of Employment

To be entitled to immunity, the governmental employee must prove that he was acting within the course and scope of his employment or authority at the time of the incident giving rise to the claim. Tex. Civ. Prac. & Rem. Code § 101.106(f). "Scope of employment" is defined as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task *lawfully* assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5) (emphasis added). "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). If the employee is acting not as a governmental official or employee,

but instead as a private citizen, the employee is not acting within the scope of his authority and the immunity provided by Section 101.106(f) will not apply. *Wallace v. Moberly*, 947 S.W.2d 273, 277 (Tex. App.—Fort Worth 1997, no writ).

Immunity does not apply to conduct that "exceeds the legitimate bounds of [the governmental employee's] office." *Kelly v. Galveston Cnty.*, 520 S.W.2d 507, 513 (Tex. App.—Houston [14th Dist.] 1975, no writ) (interference with contract). Thus, government employees are generally not immune from liability for their intentional or "individual and separate torts," such as fraud, assault, trespass, conversion, or intentional infliction of emotional distress, because such torts are rarely within the scope of employment. *Russell v. Edgewood Indep. School Dist.*, 406 S.W.2d 249, 252 (Tex. Civ. App. San Antonio 1966); *see Clark v. Univ. of Tex. Health Science Ctr.*, 919 S.W.2d 185, 188 (Tex. App.—Eastland 1996, writ denied) (dean of university would not have immunity in connection with claim of emotional distress intentionally inflicted in dean's unofficial capacity).

As Appellant acknowledges, the Texas Supreme Court has recognized that "[w]hether an employee's intentional tort is within the scope of employment is a . . . complex issue." *Franka*, 332 S.W.3d at 381 n.63. An employee's intentional, tortious conduct does not fall within the scope of employment when it is not of the same general nature as or incidental to the tasks the employee was hired to carry out. *Zarzana v. Ashley*, 218 S.W.3d 152, 159-60 (Tex. App.—Houston [14th Dist.]

2007, no pet.) (holding the fraudulent sale of counterfeit inspection stickers is not "closely connected or incidental to the authorized conduct" of a car mechanic's work) (citations omitted); *see Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760, 768 (Tex. App.—San Antonio 2002, pet. denied) (holding that broker's fraud and embezzlement from client was not related to his authorized brokerage duties and thus greatly exceeded the scope of his authority).

Likewise, an employee's criminal acts are almost never within the scope of employment or authority, especially where such acts are "unforeseeable considering the employee's duties." *Zarzana*, 218 S.W.3d at 160. Thus, a governmental employee generally does not enjoy immunity for illegal or "wrongful unofficial acts." *Bagg v. Univ. of Texas Med. Branch*, 726 S.W.2d 582, 586 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (unlawful or unauthorized actions such as ordering eavesdropping "could not have been within the scope of [hospital employees'] official duties"). This is true because when an "employee acts without statutory authority, then he cannot act within the course and scope of employment." *Camacho v. Samaniego*, 954 S.W.2d 811, 822 (Tex. App.—El Paso 1997, pet. denied) (collection of unauthorized bail bond fee); *see also Griffin v. Hawn*, 341 S.W.2d 151, 153 (Tex. 1960) ("The question is not whether [the state officials] were acting on behalf of the State to accomplish a proper governmental purpose but whether the action they were about to take is

-14-

authorized by law."); *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945) ("The acts of officials which are not lawfully authorized are not acts of the State . . . within the rule of immunity").

While Appellant cites to *Lenoir v. Moore,* in which a state employee's tortious conduct was held to be within the scope of employment, that case and, indeed, all the Texas cases in which an employee's intentional tortious or criminal conduct was held to be within the scope of employment involved conduct directly arising from the performance of the employee's authorized tasks, or which was otherwise foreseeable given the nature of the services the employee was engaged to perform on the employer's behalf. *See Lenoir v. Moore*, Cause No. 01-13-01034-CV, 2014 Tex. App. LEXIS 12703, \*25-27 (Tex. App.—Houston [1st Dist.] November 25, 2014, no pet.) (because the attending physician, employed by the government, was performing a task lawfully assigned to him, he was acting within the scope of his employment). For example, assault or false imprisonment may be within the scope of employment of a police officer or bouncer. *Kersey v. Wilson*, 69 S.W.3d 794 (Tex. App.—Fort Worth 2002, no pet.) (assault during arrest was within scope of officer's duties); *Davis v. Klevenhagen*, 971 S.W.2d 111 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (police officer enjoyed immunity from false imprisonment claim); *Durand v. Moore*, 879 S.W.2d 196 (Tex. App.—Houston [14th Dist.] 1994, no writ) (bouncer's use of force was within general

authority). Likewise, employees alleged to have committed torts in connection with their recommendation that the plaintiffs' employment be terminated were acting within the scope of their duties, as their superior had asked for such recommendations. *Anderson v. Bessman*, 365 S.W.3d 119 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In contrast, acts which occur outside the performance of the employee's general responsibilities, exceed the employee's authority, or are unforeseeable given the employee's usual duties are not subject to immunity. *See, e.g., Phelan v. Norville*, No. 07-13-00040-CV, 2014 Tex. App. LEXIS 10560, at *17 (Tex. App.—Amarillo Sept. 22, 2014, no pet.) (professor was not acting within the scope of his employment when he slapped another professor during a meeting); *Kelemen v. Elliot*, 260 S.W.3d 518, 524 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (officer was not acting within the scope of his employment when he kissed coworker while on duty); *Clark*, 919 S.W.2d at 188 (immunity did not apply to claim against supervisor for emotional distress intentionally inflicted in the workplace); *see also Zarzana*, 218 S.W.3d at 159-60 (fraudulent sale of counterfeit inspection stickers is not "closely connected or incidental to the authorized conduct" of a car mechanic's work); *Millan*, 90 S.W.3d at 768 (broker's fraud and embezzlement from client was not related to his authorized brokerage duties and thus greatly exceeded the scope of his authority).

**B.** **Appellant Was Not Acting Within the Course and Scope of His Employment as a Physics Professor With the University When He Committed Fraud in Connection With His Attempts to Solicit Investments For IsoSpec.**

Appellant did not satisfy his burden of proving that the fraudulent misrepresentations and omissions made by him in the PPM and during various IsoSpec investor and partnership meetings in connection with his efforts to solicit or assist in soliciting investments for IsoSpec occurred within the scope of his employment as a physics professor with the University. To the contrary, as the record demonstrates, Appellant's participation in IsoSpec's solicitation activities and, specifically, his fraudulent conduct which took place during such solicitations deviated from and greatly exceeded (1) the scope of his duties as a physics professor and (2) the scope of the University's licensing agreement with IsoSpec. Further, his actions benefitted the financial interests of his son, Dr. Ranier Fink, who was an owner and officer of IsoSpec. *See* Appellees' Appendix, Tab 1 (PPM) at "Executive Summary, p. 1. (C.R. 209) Thus, Appellees' suit does not fall within the limited immunity afforded government employees under Section 101.106(f), and the trial court did not err in denying Appellant's motion.

1. **Soliciting Investments for a Private Company and Committing Fraud in the Course of Such Solicitations is Entirely Unrelated to and Exceeds the Scope of Appellant's General Duties as a Physics Professor for the University.**

An examination of all of the jurisdictional evidence in the record reveals that Appellant's conduct which forms the basis of this lawsuit does not fall within the duties generally assigned to him at the University, despite the fact that he makes the self-serving assertion that his "assistance to IsoSpec was entirely related to his employment as a UT physics professor"[2] and allegedly believed he was acting in the scope of his employment with the University. Appellant's Appendix, Tab 3 at pp. 1-3. Appellant is employed by the University as a physics professor. In addition to teaching, his duties include conducting research. *Id.* at p. 2. These duties, however, cannot be expanded to include his participation in seeking investments for a private company, especially when Appellant presented no evidence that soliciting such investments was part of his regular duties as a professor at the University or that his usual scope of employment had been expanded by orders from his employer to actively solicit or assist in soliciting such investments on behalf of IsoSpec. While Appellant claims that he was not involved in helping IsoSpec acquire money from investors, he admits to attending

---

[2] While Appellant improperly seeks to now attach an affidavit from the University's Vice-President for Research, this affidavit was filed with or presented to the trial court. Appellant's Appendix, Tab 10. For these reasons, the Court cannot now consider it upon appeal because it is not part of the record considered by the trial court.

a meeting which potential investors attended, and the affidavits from Appellees demonstrate that these meeting were clearly for the purpose of soliciting investments. *Id.;* Appellant's Appendix: Tab 5 at pp. 1-2; Tab 6 at pp. 1-2; Tab 7 at pp. 1-2. (C.R. 174-180) Simply put, Appellant was in no way carrying out the tasks for which he, as a physics professor, was hired to perform for the benefit of the University when he assisted IsoSpec and his son, Defendant Dr. Ranier Fink, the CTO of IsoSpec, in their efforts to obtain funding.

Further, even assuming *arguendo* Appellant's interactions *with IsoSpec* in sharing technical knowledge and expertise on research and inventions may have been within the scope of his employment, his interactions *with Appellees* and other targeted investors were not in any way authorized or required by the University and were not otherwise in the course and scope of his employment as a physics professor. When Appellant attended investment meetings, he was no longer serving the University's interests or acting on behalf of the state or in furtherance of the state's interests. Appellant has introduced no evidence of any orders given to him by the University to assist IsoSpec in fundraising or showing that his attendance at these meetings was at the behest of the University. Instead, Appellant concedes that his attendance at the one meeting he admits attending[3] was

---

[3] Contrary to Appellant's assertions, Appellees contend Appellant attended multiple investment meetings. Appellant's Appendix: Tab 5, pp. 1-2; Tab 6, pp. 1-2; Tab 7, pp. 1-2. (C.R. 174-180)

at the request of Jack McCrary, the owner of IsoSpec, and not at the request or demand of the University. Appellant's Appendix, Tab 3 at p. 3. At that particular meeting, marketing materials, including the PPM, were handed out to third parties, including Appellees, and the strengths of IsoSpec and ANDRaS were discussed at length, as well as the details of the investment opportunity (for instance, the number of partnership units that could be obtained, the total amount of investment capital being sought and what the investment money would be used for). Appellant's Appendix: Tab 5 at pp. 1-2; Tab 6 at pp. 1-2; Tab 7 at pp. 1-2. (C.R. 174-180). It is simply inconceivable that Appellant lacked an understanding that the obvious purpose of that and other meetings he attended was to pitch investment opportunities. *Id.*

Indeed, IsoSpec's own marketing materials make clear that Appellant's relationship with IsoSpec is something more than merely tangentially related to his employment with the University of Texas. For example, in the PPM, Appellant is listed under the IsoSpec "company profile" as a member of IsoSpec's Science and Engineering Team and as a member of IsoSpec's Technology and Business Advisory Group. *See* Appellees' Appendix, Tab 1 (PPM) at "Executive Summary," p. 1 and p. 7 of 25. (C.R. 207 and C.R. 216) In addition, IsoSpec itself asserted that Appellant was acting within the scope of his employment *with IsoSpec* when he made any misrepresentations to Appellees. *See* Appellant's

Appendix, Tab 8 (IsoSpec Technologies' Petition in Intervention) ("any and all representations made by either father or son Fink were done *within the course and scope of their relationship **with [IsoSpec]**. . . .* [IsoSpec] owes a duty of indemnity to any honest and faithful person who *acts in the authorized and legitimate furtherance of its business*.") (emphasis added).

Further, Appellees have alleged that Appellant committed intentional torts and criminal conduct. Tex. Rev. Civ. Stat. art. 581-29 (criminalizing fraudulent conduct in connection with the sale of securities). Under Texas law, an agent's intentionally tortious or criminal acts are almost never within the scope of authority granted by the principal. *Zarzana,* 218 S.W.3d at 160 (citing *Ross v. Marshall*, 426 F.3d 745, 764-56 & n. 85 (5th Cir. 2005)). Appellant's fraudulent misrepresentations and omissions taking place during his solicitation of investments for a private company could not have occurred within the performance of his official duties or within the scope of his employment as a physics professor, as this conduct is so far removed from and entirely unrelated to the general duties encompassed by such a position. Even assuming Appellant made truthful statements (which is denied), Appellant's failure to correct others' misrepresentations at the potential investor meetings constituted tortious conduct outside the scope of his employment. Appellant's Brief at p. 5; Appellant's Appendix: Tab 5 at pp. 1-2; Tab 6 at pp. 1-2; Tab 7 at pp. 1-2. (C.R. 174-180)

As Appellant's motion makes clear, his job duties entailed teaching and researching at a state university; not soliciting investments for a private company, and certainly not making fraudulent statements in pursuit of such investments. Unlike a police officer's or a bouncer's commission of assault in connection with an arrest or in controlling admission to a club, a physics professor's commission of fraud in connection with a sale of stock or in solicitation of investments for a private company of which his son is an owner is entirely unrelated to the duties lawfully assigned to professors (i.e., teaching and researching). Soliciting investments and making fraudulent statements or omissions in connection with such solicitations is not conduct of the same general nature as or incidental to the conduct professors are authorized to engage in, and such actions are not foreseeable given the duties assigned to professorship positions.

In short, Appellant's participation in pitching investment opportunities was for the benefit IsoSpec, a private company, and was not for the purpose of accomplishing the duties for which he was employed by the University. Appellant should not enjoy governmental immunity for the fraudulent acts he committed against private citizens while acting on behalf of a private company and his son.

## 2. Assuming Appellant's Scope of Employment with the University Could be Expanded by the Patent Licensing Agreement Between the University and IsoSpec, Such Expanded Scope is Limited by the Terms of the Agreement.

Even assuming some of Appellant's involvement with IsoSpec could have been in performance of his duties as a professor for the University by virtue of the Patent Licensing Agreement between IsoSpec and the University, the scope of his employment in that regard is limited by the terms of the licensing agreement, a true and correct copy of which is attached hereto as Tab 2 in Appellee's Appendix. The scope of an employee's duties may be defined by an employment contract, and the Tort Claims Act defines "scope of employment" as "the performance of a task *lawfully assigned* to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5) (emphasis added). Thus, even if Appellant's "lawfully assigned" duties extended beyond his general teaching and researching activities to some involvement with IsoSpec, the only actions which could possibly fall within the scope of his employment with the University are those acts which were undertaken to satisfy *the University's* obligations and responsibilities, as defined by the licensing agreement.

The licensing agreement, however, does not impose *any* obligation on the University or its employees to obtain or assist IsoSpec in obtaining funding or investments (or any other obligation, for that matter). In fact, the agreement unambiguously provides exactly the opposite:

> **[IsoSpec]** *by itself* . . . **will** use diligent efforts to **make Licensed Products** or Licensed Services **commercially available**. . . . [IsoSpec] will (a) **maintain a reasonably** *funded***, ongoing and active research, development, manufacturing, regulatory,** *marketing or sales program* **required to make License Products** or Licensed Services **commercially available**, and (b) **fulfill the [funding] milestone events** specified in Section 2.4 of the Patent License Agreement. . . . If the obligations under this Section 2.4 are not fulfilled, [the University] may treat such failure as a breach. . . .

Appellees' Appendix, Tab 2 at Exhibit A, Sec. 2.4 (emphasis added). Indeed, the licensing agreement places the obligation to commercialize and obtain funding *entirely* on IsoSpec—**"by itself"**—and gives the University the right to treat the failure of IsoSpec to obtain funding as a breach of the agreement. *Id*. Thus, not only did the University—and, consequently, its employees—have no affirmative obligations under the agreement whatsoever, the agreement expressly places the obligation to commercialize and obtain funding on IsoSpec *alone*.

Appellant cannot possibly contend that his conduct of actively soliciting or assisting IsoSpec in soliciting investments were within the scope of his employment with the University even though the scope of the University's involvement with IsoSpec was limited to the granting of a license and even though the University expressly disclaimed any requirement to assist in fundraising. To the contrary, Appellant's conduct greatly exceeded the scope of the limited engagement between IsoSpec and the University and in fact directly contributed to fulfilling the obligations the agreement placed exclusively on IsoSpec.

-24-

**C.    A Fact Issue Exists as to Whether Appellant Was Acting Within the Scope of His Employment.**

Even if the Court cannot conclude as a matter of law that Appellant was *not* acting within the scope of his employment with the University in connection with his solicitation efforts for IsoSpec, the Court must nevertheless affirm the denial of Appellant's motion because (1) the burden is on Appellant to conclusively establish that he was in fact acting within the scope of his employment, which he has failed to do, and (2) at the very least, a fact issue has been raised.

Whether an employee was acting within the scope of employment as required by Section 101.106(f) is a question of fact, and the existence of a fact issue as to what conduct the employee engaged in and/or whether such conduct fell within the scope of employment precludes the granting of a dismissal or summary judgment on immunity grounds. *Molina*, 441 S.W.3d 578 (holding the existence of a fact issue concerning whether the officer was acting within the scope of his employment and whether he was under the influence of alcohol precluded a grant of summary judgment).

Here, Appellant has created a fact issue by denying engaging in tortious conduct or making any misrepresentations, and by directly contradicting the material facts alleged by Appellees' to have taken place. *See* Plaintiff's Second Amended Petition (C.R. 51-60); Appellant's Appendix:  Tab 5 at pp. 1-2; Tab 6 at pp. 1-2; Tab 7 at pp. 1-2 (C.R 174-180).  Specifically, Appellant asserts he only

attended one IsoSpec meeting, that he did not know the purpose of such meeting was to obtain investments or that those in attendance were potential investors, and that he did not participate in drafting the PPM and was not otherwise involved in soliciting investors. Appellant's Appendix, Tab 3 at p. 3. Appellant also offers the affidavit of Dr. Phillip Varghese that contains the conclusory statement that both he and Appellant were acting in the scope of their employment with the University when assisting IsoSpec.[4] Nevertheless, Appellees contend precisely the opposite and have attached counter-affidavits which show Appellant was actively involved in the solicitation of investments for IsoSpec and in fact attended multiple meetings, the obvious purpose of which was to pitch investment opportunities. *See* Plaintiffs' Second Amended Petition; Appellant's Appendix: Tab 5 at pp. 1-2; Tab 6 at pp. 1-2; Tab 7 at pp. 1-2. Further, the contrary contention of IsoSpec that Appellant was in fact acting within the scope of his relationship *with IsoSpec* and *in furtherance of IsoSpec's business* supports Plaintiffs' position and also raises a

---

[4]  Appellant also contends that a travel payment voucher submitted by Phillip Varghese, showing payment for mileage to and from IsoSpec Technologies for a meeting where Dr. Varghese met with Jack McCrary, somehow confirms that both he and Appellant were acting in the scope of their employment with the University. Appellant's Appendix, Tab 4. (C.R. 305-312)  However, the specific purpose of this meeting is vague.  The voucher only states the purpose of the meeting was to "discuss commercializ[ing] their technology." *Id.*  Dr. Varghese suggests in his affidavit that this meeting was to meet with representatives of IsoSpec, but the payment of an expense by a University is hardly evidence that the reimbursement was in fact proper payment for some expenses falling within the scope of the employment of the Dr. Varghese.  Moreover, payment for expenses associated meeting representatives of IsoSpec is hardly sufficient evidence that Appellant was at all times acting in the course and scope of his employment for the University when he met with potential investors. *Id.*

fact issue. *See* IsoSpec Technologies Petition in Intervention ("any and all representations made by either father or son Fink were done *within the course and scope of their relationship **with [IsoSpec]*** . . . in the authorized and legitimate *furtherance of its business*") (emphasis added).

While Appellant has certainly come up with some new and creative arguments in its appellate brief,[5] such arguments, if anything, only serve to further highlight the existence of these disputed fact issues. These disputed fact issues which directly relate to a necessary element of Appellant's defense preclude dismissal under Section 101.106(f). The resolution of these fact issues and the larger question of whether these facts, once established, prove that Appellant was acting within the scope of his employment is for the jury to decide. *Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 365 (Tex. 2013) (Boyd, J., dissenting) ("There may be fact issues that a jury must resolve to establish whether the conduct at issue was within the scope of employment."); *see* Texas Pattern Jury Charge 10.6 (2014) ("Scope of Employment").

In short, Appellant's subjective belief that he was acting within the scope of his employment is insufficient to establish his entitlement to dismissal under Section 101.106(f). Appellees' counter-affidavits, at a minimum, are sufficient to

---

[5] Notably, Appellant's motion to dismiss at the trial court level was only seven pages in substance, but Appellant has now come up with thirty-one pages of briefing to attempt to convince this Court that Appellant is entitled to governmental immunity as a matter of law.

raise a fact issue as to whether Appellant engaged in the disputed conduct and/or was acting within the course and scope of his employment when he did so. Because it would be inappropriate and premature to dismiss Appellant from this suit on immunity grounds, the denial of his motion should be affirmed.

**D.**     **Appellant Cannot Establish That Appellees' Suit Could Have Been Brought Against the University Under the Tort Claims Act.**

Appellant has also failed to prove the third element of Section 101.106(f)'s immunity defense: that Appellees' suit could have been brought against his governmental employer, the University, under the Tort Claims Act. First, as shown above, suit could not have been brought against the University because an employer is not vicariously liable for the conduct of its employees occurring outside the scope of employment. *See Anderson*, 365 S.W.3d at 126 (concluding in part that because the employees were acting within the scope of their employment, suit "could have been brought" against the governmental unit under the Act).

In addition, even assuming Appellant was acting within the scope of his employment when he made fraudulent misrepresentations or omissions while soliciting investments for IsoSpec (which is expressly denied), Appellees' claim under the Texas Securities Act is not a common-law tort action which "could have been brought *under this chapter* [i.e., under the Tort Claims Act] against the governmental unit." *See* Tex. Civ. Prac. & Rem. Code § 101.106(f) (emphasis

added). In addition to their common-law claims, Appellees have sued Appellant under the Texas Securities Act, which provides an independent statutory remedy for fraud, distinct from the common-law tort of fraud and the Tort Claims Act. *See Franka*, 332 S.W.3d at 379 ("The rule [is] that a tort suit against the government, *as distinct from a statutory claim*, is brought 'under' the [Tort Claims] Act for purposes of section 101.106") (emphasis added); *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (holding *common-law* tort claims could have been brought against the government under the TTCA); *Weaver v. McKeever*, No. 01-12-00851-CV, 2014 Tex. App. LEXIS 2092 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014) (construing *Franka* as holding that "all *common-law* tort theories alleged against a governmental unit are assumed to be 'under' the Tort Claims Act for purposes of section 101.106") (emphasis added); *see also* Tex. Civ. Prac. & Rem. Code § 101.003 ("The remedies authorized by this chapter are in addition to any other legal remedies.").

Appellant's interpretation of Section 101.106(f) would effectively erase the phrase "under this chapter" from the statute. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 235 S.W.3d 653, 659-60 (Tex. 2008) ("Since we give effect to all words in a statute, 'under this chapter' must operate to make the scope of [TTCA Section 101.106] (a), (c), (e), and (f) different from that of (b)."). Thus, Section 101.106(f)'s "could have been brought" element refers to only common-law tort

claims, as opposed to statutory claims, such as Appellees' claim under the Texas Securities Act. *Id.* (stating that the phrase "under this chapter" was a "limiting phrase" which refers to only common-law tort claims).

Further, even if Section 101.106(f)'s phrase "under this chapter" could be construed as applying to statutory claims unless such statute contains a waiver of governmental immunity, the Texas Securities Act clearly and unambiguously contains such a waiver. The Texas Securities Act prohibits "[a]ny person" from engaging in fraud in connection with a sale of securities. Tex. Rev. Civ. Stat. art. 581-29. "Person" is defined by the Securities Act as including "a government, or a political subdivision or agency thereof." Tex. Rev. Civ. Stat. art. 581-4. In *Mission*, the Texas Supreme Court considered whether a claim brought under the Texas Commission on Human Rights Act ("TCHRA"), which prohibited an "employer" from engaging in certain acts, "could have been brought" under the Tort Claims Act for purposes of Section 101.106. *Mission*, 235 S.W.3d at 660. The Court construed the TCHRA's definition of "employer," which included "a county, municipality, state agency, or state instrumentality," as operating as a "clear[] and unambiguous[] waive[r] [of] immunity." *Id.* Thus, the Court held that a claim under the TCHRA could not have been brought under the Tort Claims Act. *Id.*

Likewise, Appellees' claim under the Texas Securities Act is not one which "could have been brought under the [Tort Claims] Act," because, like the statute at issue in *Mission*, the Securities Act's definition of "person" as including a government and its agencies is a clear and unambiguous waiver of governmental immunity. *See id.* at 659 ("Claims against the government brought pursuant to waivers of sovereign immunity that exist apart from the Tort Claims Act are not 'brought under [the Tort Claims Act].'"). Therefore, the Court properly denied Appellant's motion to dismiss because he could not satisfy the third element of his immunity defense as he cannot prove that Appellees' claim under the Texas Securities Act could have been brought against the University under the Tort Claims Act.

## VII. Conclusion

For the factual and legal reasons set forth above, this Court should overrule all of the Appellant's points of errors, affirm the trial court's order of November

21, 2014 denying Appellant's motion to dismiss, and remand the case back to the trial court for a full trial on the merits of the case.

Respectfully submitted,

**LISKOW & LEWIS**

By: /s/ Wade T. Howard
  Wade T. Howard
  State Bar No. 00787725
  Michael P. Cash
  State Bar No. 03965500
  Alma F. Gomez
  Texas State Bar No. 24069800
1001 Fannin, Suite 1800
Houston, Texas 77002
Telephone: (713) 651-2900
Telecopier: (713) 651-2908

**ATTORNEYS FOR APPELLEES**

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellees' Brief was produced on a computer using Microsoft Word and contains 5767 words, as determined by the word-count feature of the word processing software, excluding the sections of the documented listed in Tex. R. App. 9.4(i)(1).

/s/ Wade T. Howard
Wade T. Howard

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellees' Brief was served on all counsel of record by email on this the 23rd day of April 2015:

William B. Mateja, Esq.
John C.C. Sanders, Jr., Esq.
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Tel. 214-747-5070
Fax. 214-747-2091
*Via Email: mateja@fr.com*
*Via Email: jsanders@fr.com*
*Attorneys for Defendant Dr. Manfred Fink, Ph.D*

Timothy M. McDaniel, Esq.
IRELAN MCDANIEL, PLLC
440 Louisiana Street
Suite 1800
Houston, Texas 77002
Tel. 713-222-7666
Fax. 713-222.7669
*Via Email :*
*tmcdaniel@imtexaslaw.com*
*Attorneys for Defendant Dr. Rainer Fink, Ph.D*

H. Melissa Mather
Assistant Attorney General
Office of the Attorney General
for the State of Texas
Financial Litigation, Tax, and Charitable Trusts Division
P.O. Box 12548
Austin, TX 78711-2548
(512) 475-2540 – direct
(512) 475-2994 - fax
*Via Email*
*H.Melissa.Mather@texasattorneygeneral.gov*
*Attorneys for Defendant Dr. Manfred Fink, Ph.D*

Andrew R. Harvin, Esq.
Peter Wells, Esq.
DOYLE, RESTREPO, HARVIN & ROBBINS, LLP
The Lyric Centre
440 Louisiana, Suite 2300
Houston, TX 77002
Tel: 713-228-5100
Fax: 713-228-6138
*Via Email:*
*aharvin@drhrlaw.com*
*Via Email:PWells@drhrlaw.com*
*Attorneys for Third-Party Defendant William Hightower*

-33-

Arnold Anderson "Andy" Vickery, Esq.  
Fred H. Shepherd, Esq.  
THE VICKERY LAW FIRM  
Park Laureate Building  
10000 Memorial Drive, Suite 750  
Houston, Texas 77024  
Tel. 713-526-1100  
Fax. 713-523-5939  
*Via Email: andy@justiceseekers.com*  
*Via Email: fred@justiceseekers.com*  
*Via Email: karin@justiceseekers.com*  
*Attorneys for IsoSpec Technologies, L.P.*

Paul Flack  
PRATT & FLACK, LLP  
1331 Lamar Street  
Four Houston Center, Suite 1250  
Houston, Texas 77010  
Tel: (713) 936-2401  
Fax: (713) 481-0231  
*Via Email:*  
*pflack@prattflack.com*  
*Attorneys for Third-Party*  
*Defendant UBS*

/s/ Wade T. Howard  
Wade T. Howard

4178307v1_doc.